FREDERICK W. WAGEMAN, Respondent-Appellant, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant-Respondent.

First Department, October 21, 1965.

*W. A. Newcomb* for respondent-appellant.

*David R. Crow* of counsel (*Tanner, Friend, Kinnan & Post,* attorneys), for appellant-respondent.

BREITEL, J. Plaintiff, an insured under a policy of major medical health insurance, recovered a judgment after a jury trial in the sum of $2,229.03. Before submission to the jury, the court dismissed several of the causes of action. There are cross appeals.

The insurer had cancelled the policy sometime after its issuance, and rejected plaintiff's claims. On its appeal defendant insurer urges, as a matter of law, that the cancellation of the policy was effective and that plaintiff insured was barred from any recovery by reason of his false material answers to questions on his application for insurance. The application was physically attached to the insurance policy issued, thus making it an integral part of the insurance contract. Plaintiff insured appeals from dismissal by the court of his causes of action for consequential damages sustained through the insurer's alleged delay and negligence in canceling the policy, thus depriving him of coverage for the interim and ensuing period.

It is only necessary to consider the appeal tendered by defendant insurer, there being sufficient support in the record for the trial court's conclusions with respect to the dismissed causes of action. Because it is concluded that the insured is barred, as a matter of law, from any recovery by reason of his false answers to the insurance application, the judgment, to the extent that it is in his favor, must be reversed, and the complaint dismissed.

The facts are few and simple. Giving full value to plaintiff's proof, they apparently arise from the conjunction of the insurance agents' eagerness to sell insurance and the insured's eagerness to acquire insurance which he knew or should have known he would have difficulty in purchasing.

On March 13, 1962 plaintiff made written application for a policy of major or comprehensive medical insurance. At the time, he was 43 years of age and an account executive engaged in the selling of a television monitoring service. In response to the question of medical treatment within the preceding five years, he cited two occasions for treatments in 1959 from a Dr. Schwimmer, specifying that one was only for bursitis of the right shoulder and the second was only for a virus condition. Concededly, prior to the time of his written application, but within the five-year period, plaintiff had also consulted Dr. Schwimmer on these and a significant number of other occasions for a mild intermittent hypertension, and had received medication for the condition. Plaintiff's explanation for the false

answers was that he had disclosed the true facts to the two insurance agents representing the insurer at the time, and they told him that, in view of its mild and intermittent character, reference to the hypertension condition could be omitted from the answers to the application.

Later, in the Summer and Fall of 1962, plaintiff made claims of the company for medical reimbursement, in part for expenses related to the hypertension (indeed, for " serpasil," the specific for hypertension). The company investigated and not until February 8, 1963, some six months later, did the insurer cancel the policy and reject the claims. By that time plaintiff was in the hospital for a condition unconnected with hypertension. Subsequent to the cancellation, plaintiff sustained the bulk of the medical expenses for which he recovered judgment after trial.

(In connection with plaintiff's other and dismissed causes of action, he established that he had cancelled hospital and medical insurance he had previously carried under the Blue Cross and Blue Shield programs upon receiving major comprehensive medical insurance under the policy in suit.)

The proof showed that Dr. Schwimmer had treated or examined plaintiff for hypertension on a large number of occasions from 1959 until the date of the application, and even beyond into at least February, 1963. The physician, who testified, characterized the hypertension as both mild and intermittent. The insurer's medical examiner testified, however, without contradiction, that if the company had known these facts it would have declined to issue the policy.

The policy application expressly provided that no agent or other person had power to make, modify, or discharge any contract of insurance or to bind the company by making promises respecting benefits on any policy, and that no information as to any matter made a subject of inquiry shall be considered as known to the company unless stated in the application. The application, as noted earlier, and in accordance with the provisions of section 142 and paragraph (c) of subdivision 1 of section 155 of the Insurance Law, was attached to the policy when issued, thus making it a part of the contract of insurance.

The omissions from the answer and the misleading answers given by plaintiff in his application were material as a matter of law (see *Johnson* v. *Mutual Health & Acc. Assn.*, 5 A D 2d 103, mod. on other grounds 5 N Y 2d 1031; *Reznikoff* v. *Equitable Life Assur. Soc.*, 267 App. Div. 785, affd. 294 N. Y. 935; Insurance Law, § 149; 30 N. Y. Jur., Insurance, §§ 954–955; cf. *Hartnell* v. *Home Life Ins. Co.*, 18 A D 2d 281 [BASTOW, J. P.]). Of

hypertension, even if mild and intermittent, one may assert that anyone of mature experience would know, and a court too must take judicial notice, that it is a condition of substantial medical concern because of its obvious relation as a suspect symptom or as a cause of future complicating degenerative cardiac and circulatory diseases (cf. *New York Life Ins. Co.* v. *Breen*, 242 App. Div. 453, involving " acute " hypertension). In any event, defendant's medical examiner's testimony, without contradiction, established that the answers to the question influenced the insurer and were therefore material. In the *Hartnett* case (*supra*) there was involved also a concealment of hypertension and treatment for the condition with " serpasil," the same specific medication received by plaintiff insured in this case. While the court in that case held that a jury finding of immateriality would only be against the weight of the credible evidence, the proof was not as here that there was a recurring condition of hypertension with periodic examinations for the condition and repeated treatment for it. In the *Hartnett* case only one visit to the physician was involved and but one prescription for medication. What is not material to this case is that in the *Hartnett* case the principal issue (and therefore the principal issue upon the new trial) was whether the insured had ever learned of the diagnosis or the nature of the treatment he had received from his physician. In this case, of course, insured's knowledge from inception of the events is conceded.

On parallel reasoning plaintiff knew or should have known that the diagnosis of mild and intermittent hypertension was one that the insurer would want to know and that it would be influenced by such knowledge. Again, the situation is unlike that in the *Harnett* case (*supra*) where the insured visited his physician only for a cold and neuritis, the physician, in the course of examination, found high blood pressure on that one occasion, and there was insufficient evidence, and certainly no direct evidence as there is here, that the insured always knew of the more serious diagnosis. Notably, plaintiff insured in this case was a man of business in his middle years. As such plaintiff was not entitled to rely on the agents' statements, if they were ever made, because as an experienced business man he knew or should have known that the motivation to sell insurance might well overcome the ordinary scruples and the duty owed by the agents to their company. Both by the terms of the application and one's general knowledge of the limitations on the authority of an agent, especially if insured knew or had reason to believe that the agents were acting in fraud of their

employer, insured was aware that he could not rely on the agents' purported advice or instructions (see, generally, 31 N. Y. Jur., Insurance, §§ 1526, 1533, 1539; Restatement, Agency 2d, §§ 166, 167, 262, Comment c).

To cap the matter, for the insured to list part of the reason for visiting Dr. Schwimmer and omit the other, could not by any logical process escape being a plain falsehood deliberately made. In no event could he have believed that the company would prefer to know less rather than more.

Under these circumstances, the rule is definite that plaintiff may not recover for benefits under a policy of insurance where the application containing the false material answers is attached to the policy issued (*Minsker* v. *John Hancock Mut. Life Ins. Co.,* 254 N. Y. 333; 29 N. Y. Jur., Insurance, § 630). The *Minsker* case involved false answers in an application for life insurance and the claim, as in this case, by the insured that he had made a complete disclosure to the company agent. The information withheld also related to prior medical examination and treatment. The court, in holding for the insurance company, noted the historic and essential change effected in the rule by the enactment of section 58 (now included in § 142) of the Insurance Law requiring applications to be attached to the policy, if the company wishes to avail itself of false material answers in such applications. (Cf. *Lampke* v. *Metropolitan Life Ins. Co.,* 279 N. Y. 157, in which a holding in favor of the insured, in otherwise like circumstances, was sustained on the ground that the offending application form was not attached to the policy when the latter was delivered. See, also, 29 N. Y. Jur., Insurance, § 631.)

Accordingly, the judgment to the extent that it is in favor of plaintiff should be reversed, on the law, the verdict vacated, the complaint dismissed, and the judgment should be otherwise affirmed, with costs and disbursements to defendant-appellant-respondent against plaintiff-respondent-appellant.

Botein, P. J., McNally, Eager and Witmer, JJ., concur.

Judgment to the extent that it is in favor of plaintiff reversed, on the law, the verdict vacated, the complaint dismissed, and the judgment otherwise affirmed, with $50 costs to defendant-appellant-respondent against plaintiff-respondent-appellant. Settle order on notice.