Per Curiam.

We conclude that in this case the decedent misrepresented material facts relative to his health as a matter of law.
The uncontested proof established two misrepresentations, both in writing.
The first was in the original application for the life insurance policy for recovery on which this suit was brought. It was dated October 25, 1968. In it, decedent, a successful and well-educated professional man, who it cannot be denied understood what he was doing, while accurately disclosing two hospitalizations for relatively minor surgery in the early 1950’s, answered "no” to a question as to whether he had ever been treated for "fainting or dizzy spells”. In fact, in 1962 he had been hospitalized for weeks because of the onset of precisely those symptoms the intensity of which was such that he had to be rushed to the hospital in an ambulance as an emergency case. If an accurate answer had revealed the fainting and dizziness, whose revelation would have led to the disclosure of decedent’s hospitalization, its records would have indicated a diagnosis of "posterion inferior cerebral syndrome”, manifested, among other things, by a "very marked nystagmus to the right with a rapid component to the right”, an important objective neurological sign of brain damage.
The second misrepresentation occurred about two months later, when decedent updated his application by subscribing to its amendment on a form which expressly and explicitly provided that it was to be "considered a part of said application and subject to the representations and agreements therein”. On the date he signed the amendment decedent was in the midst of a new hospitalization which had commenced over a week earlier. Yet, by representing that "no changes have occurred which would make said statements and answers *274 [the ones in the original application] incorrect or incomplete as of the present date” (that of the amendment), he kept his current hospitalization hidden from the insurer.
This second undisclosed hospitalization again followed a seizure of extreme dizziness requiring the services of an ambulance. Blood pressure tests made upon decedent’s admission to the hospital, revealed a foreboding pressure of "240 over 120”. According to the hospital chart, the results of a broad range of other tests, including a spinal tap, urinalysis, electrocardiogram and electroencephalogram, pointed to the presence of a brain tumor, which indeed turned out to be the cause of decedent’s death only months thereafter. The attending neurologist had been subpoenaed to trial by the defendant. Plaintiff offered no medical proof of her own.
While the questions of whether there is a misrepresentation of health and, if so, whether that misrepresentation is material, may be ones for the trier of the facts (Insurance Law, § 149; Piccininni v Aetna Life Ins. Co., 250 App Div 498, 499; Giuliani v Metropolitan Life Ins. Co., 269 App Div 376; cf. Geer v Union Mut. Life Ins. Co., 273 NY 261), here we are required to hold that decedent’s undisputable misrepresentations were material as a matter of law (cf. Vander Veer v Continental Cas. Co., 34 NY2d 50, 53). This is especially so since, for the purpose of determining the materiality of the misrepresentations, a decedent’s own understanding of their significance is irrelevant. For, specifically with regard to a failure to disclose hospital or other institutional treatment, subdivision 4 of section 149 of the Insurance Law provides that it "shall be deemed, for the purpose of determining its materiality, a misrepresentation that the applicant has not had the disease, ailment or other medical impairment for which such treatment or care was given”. Therefore, the net effect of the nondisclosures here, especially in combination, must be said to have "deprived the defendant of freedom of choice in determining whether to accept or reject the risk” (Vander Veer v Continental Cas. Co., 34 NY2d 50, 53, supra; see, also, Wageman v Metropolitan Life Ins. Co., 24 AD2d 67, affd 18 NY2d 777).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion.
*275 Order affirmed, with costs.