PROCESS PLANTS CORP., Respondent, v BENEFICIAL NATIONAL LIFE INSURANCE COMPANY, Appellant.

First Department, July 8, 1976

*William E. Kelly* of counsel *(Charles M. Pratt* and *Brian P. Gunshor* with him on the brief; *Casey, Lane & Mittendorf,* attorneys), for appellant.

*Thomas R. Newman* of counsel *(John J. Bower* and *Steven DiJoseph* with him on the brief; *Bower & Gardner,* attorneys), for respondent.

*Per Curiam.* On December 8, 1967, defendant Beneficial National Life Insurance Company (hereinafter Beneficial) issued a policy of insurance on the life of Guy Barbolini in the amount of $1,017,665 to plaintiff Process Plants Corp. (hereinafter Process) as owner and beneficiary: Barbolini was an employee and president of Process. He died on October 2, 1968 of a heart attack, less than one year after issuance of the policy and within its period of contestability. The record discloses that the insurance application cosigned by Barbolini and Process represented that his medical history was negative except for a hernia operation in 1926. Question 5 on part II of the application required Barbolini to disclose, among other matters, whether "[t]o the best of [his] knowledge," he had ever consulted a physician for "chest pain, shortness of breath, palpitation, irregular pulse, elevated blood pressure, or any other disorder of the heart or blood vessels." Question 7 on part II similarly required Barbolini to disclose whether in the preceding five years he had "[c]onsulted, been examined by or treated by a physician * * * not previously mentioned," whether he "[h]ad any EKG, chest x-ray, or other laboratory studies;" whether he had any "treatment or observation in a clinic, hospital or similar institution not previously mentioned." Aside from disclosing an EKG and checkup two years earlier and referring to the hernia operation, Mr. Barbolini

answered these questions in the negative. Further, at trial it was shown that Barbolini had had numerous cardiac related complaints over the years, had visited physicians for treatment of those complaints and had taken medication. At the very time he was applying for insurance, Barbolini was apparently consulting his personal friend and physician Dr. Panebianco for high blood pressure. A widely-known antihypertensive drug, Aldomet, was prescribed and used. It further appears that Barbolini's treatments were not always recorded by Dr. Panebianco and that the written report issued by Pathological Laboratories after a blood profile test of Barbolini on November 16, 1967 is no longer in existence, both the laboratory and Dr. Panebianco having destroyed same after Mr. Barbolini's death. Dr. Kalina, a cardiologist, to whom Barbolini was referred, concluded that he had no organic heart disease, but on one occasion recommended two heart regulating drugs. It also appears that Dr. Kalina found an enlarged left ventricle which could be indicative of hypertension.

It is the rule that even an innocent misrepresentation as to specific diseases or ailments, if material, is sufficient to allow the insurer to avoid the contract of insurance or to defeat recovery thereunder *(Eastern Dist. Piece Dye Works v Travelers Ins. Co.,* 234 NY 441, 449-450; 30 NY Jur, Insurance, §§ 947, 949). Subdivision 2 of section 149 of the Insurance Law provides that "[n]o misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." Further, subdivision 4 of section 149 of the Insurance Law states that a misrepresentation that an applicant has not had previous medical treatment shall be deemed, for the purpose of determining its materiality, a misrepresentation that the applicant has not had the ailment for which treatment was given. Ordinarily, the question of materiality of misrepresentation is a question of fact for the jury. However, where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine. The test is whether failure to furnish a true answer defeats or seriously interferes with the exercise of the insurance company's right to accept or reject the application. The major question is whether the company has been induced to accept an application which it might

otherwise have refused (see *Geer v Union Mut. Life Ins. Co.,* 273 NY 261). Applying the foregoing test to the instant facts, it is clear that the misrepresentation is material as a matter of law and that the complaint should have been dismissed.

In *Wageman v Metropolitan Life Ins. Co.* (24 AD2d 67, affd 18 NY2d 777), the applicant had failed to disclose in his application in response to the question of medical treatment the fact that within the prior five-year period he had consulted a physician for a mild intermittent hypertension, and had received medication for this condition. Justice BREITEL in an opinion in which the other Justices unanimously concurred, declared: "The omissions from the answer * * * given by plaintiff in his application were material as a matter of law (see *Johnson v Mutual Health & Acc. Assn.,* 5 AD2d 103, mod. on other grounds 5 NY2d 1031; *Reznikoff v Equitable Life Assur. Soc.,* 267 App Div 785, affd 294 N.Y. 935; Insurance Law, § 149; 30 N.Y. Jur., Insurance, §§ 954-955; cf. *Hartnett v Home Life Ins. Co.,* 18 AD2d 281 [BASTOW, J.P.]). Of hypertension, even if mild and intermittent, one may assert that anyone of mature experience would know, and a court too must take judicial notice, that it is a condition of substantial medical concern because of its obvious relation as a suspect symptom or as a cause of future complicating degenerative cardiac and circulatory diseases (cf *New York Life Ins. Co. v Breen,* 242 App. Div. 453, involving 'acute' hypertension)." *(Wageman v Metropolitan Life Ins. Co.,* 24 AD2d 67, 69-70, *supra;* see, also, *Vander Veer v Continental Cas. Co.,* 34 NY2d 50; *Tolar v Metropolitan Life Ins. Co.,* 297 NY 441.)

Robert Nemchik, the chief underwriter for Beneficial, testified that he had no information about the treatment by Dr. Kalina; that if Beneficial had known of the prescription for Aldomet tablets, it would not have issued the policy; and that if Beneficial had known the details of the history of cardiac complaints, it would not have issued the policy, but would have undertaken a more detailed underwriting examination, namely, one directed to the discovery of the seriousness of Mr. Barbolini's condition. Moreover, Nemchik referred to Beneficial's underwriting manual which corroborated his conclusions in all respects. Accordingly, the existence of Barbolini's treatment for high blood pressure at the time he was being examined for his insurance, the Aldomet prescription and the 15-year history of complaints referable to heart disorders, were material to Beneficial in that if it had known of the true

health history, it would not have issued the policy that was issued.

Also, the trial court incorrectly charged that defendant Beneficial's case was based on fraud with the consequent requirement that defendant demonstrate *scienter* on Barbolini's and plaintiff's part, that is, a showing of deliberate misleading of Beneficial. A defense sounding in equity to rescind, i.e., set aside an insurance contract for material misrepresentation, does not require proof that the misrepresentation was made with intent to deceive. Such defense is distinct from a suit for damages for false representation (see *Sparer v Travelers Ins. Co.,* 185 App Div 861, 866; see, also, *Barrett v State Mut. Life Ins. Co. of Amer.,* 49 AD2d 856; *Sommer v Guardian Life Ins. Co. of Hartford, Conn.,* 281 NY 508). Further, the trial court erred in charging that Mr. Barbolini was entitled to construe the questions asked in the application in a reasonable manner and to disclose only such illnesses, conditions or consultations which were not of a trivial or minor nature and which did not impair his general health. The jury was instructed that if they decided that Mr. Barbolini had construed the medical history question reasonably and answered it truthfully, they could conclude that there had been no misrepresentation on his part. The specific questions relating to Barbolini's past medical history did not permit Barbolini to make a self-evaluation of the materiality of his health history. This is not a situation where an insurance company asked the applicant for an opinion, that is, whether the applicant, insofar as he knew and believed, was in good health. Under those circumstances, the actual falsity of the applicant's statement, if made in good faith, is without legal consequence *(Sommer v Guardian Life Ins. Co., supra).*

By failing to disclose in response to the specific inquiries contained in the questions relevant to his health history certain matters as above indicated, Mr. Barbolini deprived the insurance company of "freedom of choice in determining whether to accept or reject the risk" *(Vander Veer v Continental Cas. Co., supra,* p 53); see *Leamy v Berkshire Life Ins. Co.,* 46 AD2d 965, affd 39 NY2d 271). It is equally clear that Beneficial is not required to establish that Barbolini had heart disease or hypertension, as it sufficiently demonstrated the findings of Barbolini's physicians and that it would not have issued the policy had it known of those findings *(Tolar v Metropolitan Life Ins. Co., supra,* p 447).

If we were not dismissing the complaint, we would in any event reverse and direct a new trial on the ground that the verdict was against the weight of the credible evidence and because of the errors in the charge alluded to herein.

The judgment of the Supreme Court, New York County (SAYPOL, J.), entered June 17, 1975, in the amount of $1,487,267.85, after a jury verdict was returned for plaintiff and against the defendant, should be reversed on the law and the complaint dismissed with costs and disbursements.

KUPFERMAN, J. (dissenting). While there may have been a lack of a candid disclosure on the insurance application form, the defendant placed no reliance thereon and examined the plaintiff's decedent in depth, including having access to the various items, which, if the form had been properly completed, would in no greater or different detail have been brought to the defendant's attention.

I would affirm.

NUNEZ, J. (dissenting). The facts concerning the condition of the insured's health when he applied for insurance are not as related by the defendant and adopted by the majority. We must bear in mind that, the jury having found in plaintiff's favor, the plaintiff is entitled "to the most favorable view of the evidence, including reasonable inferences which may be drawn therefrom" *(Lee v Lesniak,* 40 AD2d 756; see, also, *Owen v Rochester-Penfield Bus Co.,* 304 NY 457, 459). All disputed questions of fact and credibility must be viewed in the light most favorable to plaintiff and deemed to have been resolved in plaintiff's favor. *(Matter of Kornblum Metals Co. v Intsel Corp.,* 38 NY2d 376, 379.) Thus viewed, the record establishes that, prior to his sudden and fatal heart attack in 1968, Mr. Barbolini had no heart disease and no hypertension, that each of his doctors had so advised him, and that the isolated complaints that he had over the years were not evidence of any underlying pathology but were temporary trivial upsets about which he need not be concerned.

Mr. Barbolini, 55 years old, healthy and president and chief operating officer of the plaintiff, a large chemical concern, applied for a life insurance policy in which the corporation was designated as beneficiary. On December 8, 1967 defendant issued the $1,000,000 policy after ascertaining Barbolini's state of health by: having him undergo two separate and complete physical examinations by its examining physicians,

Drs. Marcus and Benson, which included an electrocardia-gram, a six-foot chest X-ray, and urine specimens; having communicated with and received from Barbolini's personal physician, Dr. Panebianco, information as to his medical background; and having obtained from Dr. Panebianco three prior normal electrocardiograms dated December 16, 1961, October 6, 1964 and May 17, 1966, together with the report of the cardiologist who took them, Dr. Kalina.

The defendant must have been fully satisfied with Barbolini's state of health and the risk it was undertaking for it offered a second $1,000,000 policy on his life, which Barbolini refused. Ten months after the policy was issued, Barbolini suddenly died of a massive heart attack.

On January 21, 1969 defendant disclaimed liability on the principal ground that the assured had been suffering from some pre-existing cardiac condition. The letter of disclaimer stated, in part, that Barbolini had made material representa-tions as to his past physical health that "were not true and correct, in that he had underwent [sic] treatment for serious medical conditions and had consultations and examinations by physicians in connection with these conditions prior to appli-cation for this policy." The record does not support these assertions. Barbolini was shown to be an extremely active, driving type of executive responsible for a reasonably large firm. Uncontradicted testimony and his diaries establish that except for one episode of low back strain in 1964 and pneumo-nia in 1954, he never missed a working day in his abnormally busy schedule.

My brethren acknowledge that "[o]rdinarily, the question of materiality of misrepresentation is a question of fact for the jury." And they are right. Subdivision 2 of section 149 of the Insurance Law provides: "No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder un-less such misrepresentation was material." (See, also, *Leamy v Berkshire Life Ins. Co.,* 39 NY2d 271, 274 and cases therein cited.) Why the rule is not followed in this case escapes me completely. They seek to justify dismissal as a matter of law by stating that "the materiality is clear and substantially uncontradicted." We must have read different records for I agree with the jury's opposite finding.

The issues were exhaustively delineated and fairly submit-ted to the jury by an able and experienced Justice. No appel-late court should substitute its judgment for that of the jury,

absent error here not present. To do so would destroy our system. If Judges are to decide issues of fact, then let us do away with our present system via constitutional change and not by judicial fiat.

This insurance company was more than happy to underwrite this large policy. Barbolini was found by it to be so healthy that it wanted to insure his life for $2,000,000 instead of $1,000,000. Obviously the company was attracted by the prospect of fat premiums over a long period of time. Barbolini's premature sudden death must have been as unexpected and unforeseen to him and his beneficiary as it was to the defendant who gambled and lost. Under the majority's ruling, life insurance policies will not only be contestable during the first two years, but, I am afraid, claim-proof.

I would affirm.

LUPIANO, BIRNS and SILVERMAN, JJ., concur in *Per Curiam* opinion; KUPFERMAN, J. P., and NUNEZ, J., dissent in separate opinions.

Judgment, Supreme Court, New York County, entered on June 17, 1975, reversed, on the law, and vacated, and the complaint dismissed. Appellant shall recover of respondent $60 costs and disbursements of this appeal.