**MUTUAL BENEFIT LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Thomas J. MORLEY, Jr., as guardian of the person and property of Richard L. Morley, an infant, and as Administrator of the Estate of Theresa J. Morley, Defendants.**

No. 88 Civ. 6315 (KC).

United States District Court, S.D. New York.

Oct. 4, 1989.

Christopher R. Belmonte and Louis M. Lagalante, Lane & Mittendorf, New York City, for plaintiff.

Marino D'Orazio and John Basso, Moran, Spiegel, Pergament, Brown & Basso, New York City, for defendants.

## OPINION AND ORDER

CONBOY, District Judge:

Plaintiff Mutual Benefit Life Insurance Company ("Mutual Benefit") brings this diversity action to rescind the life insurance policy it issued to the decedent, Theresa J. Morley. (Unless otherwise indicated the name Morley refers to Theresa J. Morley.) Mutual Benefit moves for summary judgment on the ground that Morley made material misrepresentations on her application for the policy. Defendant Thomas J. Morley, the administrator of Morley's estate and the guardian of her infant son, denies any material misrepresentation, and cross-moves for summary judgment. For the reasons stated below, Mutual Benefit's motion for summary judgment is granted.

## BACKGROUND

On September 18, 1986, Morley applied to Mutual Benefit for a life insurance policy, naming her son, Richard L. Morley, as beneficiary in the event of her death. Question 3(e) of the application asked whether the applicant had "ever had, been told [she] had, or been treated for ... nervous breakdowns or mental disorders." Defendants' Depositions and Exhibits, Exhibits 1 and 2. Question 5 asked whether the applicant had ever been to a hospital or sanitarium for treatment, observation, diagnosis or routine examination. *Id.* For both questions, the applicant was instructed to provide details including "diagnoses, dates, durations, and names and addresses of all doctors" for affirmative answers. *Id.*

Morley disclosed that she had been hospitalized three times for nervous breakdowns, for four weeks in 1977, three weeks in 1979 and four or five weeks in 1981 or 1982. Morley also disclosed the name of

her current psychiatrist, Dr. Taryn Fishman, her status as a psychiatric outpatient, and her prescription for Lithium, 300 mg. per day. Morley signed her name to the application, certifying that the answers were true and complete. *Id.*

Relying on the truth and completeness of Morley's disclosures and on a routine underwriter's investigation, Mutual Benefit issued a policy in the face amount of $130,000 on October 9, 1986. This investigation included forwarding an Attending Physician Statement (APS) to Dr. Taryn Fishman, who reported that Morley's "depression" was in "remission". Defendants' Depositions and Exhibits, Exhibit 4. This information alleviated the concerns that Mutual Benefit had about issuing a policy to an applicant with a history like the one Morley gave on her application. Deposition of Dr. Bartholomew A. Ruggieri ("Ruggieri Dep.") at 42. Mutual Benefit did not request any of Morley's medical records, for which authorization had been given. Defendant's Memorandum of Law and Facts ("Defendants' Mem.") at 9.

Morley died on June 1, 1987 of an overdose of diphenhydramine.[1] On January 7, 1988, defendant Thomas J. Morley submitted a claim to Mutual Benefit for the proceeds of the policy. As is usual where the insured dies within one year of the issue date of the policy, Mutual Benefit conducted its routine claim investigation. Affidavit of Henry G. Heise, sworn to February 27, 1989 ("Heise Aff."), ¶ 4.

During the course of this investigation, Mutual Benefit discovered that, contrary to the representations made by Morley in her application, Morley had been hospitalized for psychotic episodes on five separate additional occasions from 1972 through 1976 and that Morley had, on numerous occasions, attempted to commit suicide in a variety of ways. *See* Heise Aff., ¶ 5–13; Plaintiff's Exhibits to the Deposition of Dr. Richard Kopff, taken December 19, 1988 ("Plaintiff's Exhibits"), Exhibits 2–3, 5, 6–8, 10–11, 14–15. Morley did not disclose these five previous hospitalizations, rang-

ing from three to nine weeks, which were precipitated by severe psychotic, sometimes suicidal, episodes. She also did not disclose the name of a former psychiatrist who had treated her from 1972 to 1976 and who described her as chronically ill and potentially suicidal. Finally, Morley did not disclose a diagnosis of "suicidal attempt—overdose of Mellaril" for a 1974 hospitalization. Affidavit of Christopher R. Belmonte, sworn to February 27, 1989 ("Belmonte Aff."), Exhibit 4.

Three of Mutual Benefit's employees, including its chief underwriter, Henry G. Heise, assert that, had Morley disclosed the five undisclosed hospital stays and the suicide attempts, Mutual Benefit would not have issued the policy. Heise Aff., ¶¶ 14–20; Walker Dep. at 86–88; Ruggieri Dep. at 43–44. Heise's assertions are supported with references to Mutual Benefit's underwriting manual. Heise Aff., ¶¶ 16–18. Because of Morley's assertedly material misrepresentations, Mutual Benefit seeks to rescind the policy. Complaint at 6. It has tendered a check to defendant Morley representing a refund of all premiums paid plus interest. Plaintiff's Rule 3(g) Statement at 2.

Defendants counterclaim for the proceeds of the policy. They maintain that no misrepresentations were made. While conceding that Morley "did not reveal hospitalizations in 1972, 1973, 1974 and 1976," Defendants' Mem. at 8, they contend that Morley "made a full disclosure of all the necessary information regarding her mental disorder." Defendants' Mem. at 22. Defendants also contend that, even if there were misrepresentations, they were not material because Morley provided enough information to put Mutual Benefit on notice that she had a serious mental disorder. Thus, any additional information would not have made any difference in Mutual Benefit's decision to issue the policy. Finally, defendants assert, Mutual Benefit could and should have done a more thorough investigation before issuing the policy.

---

1. Mutual Benefit does not raise the suicide defense in its motion, but reserves it for trial.

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 8, n. 4.

Both parties have moved for summary judgment.[2]

## DISCUSSION

Summary judgment may be granted only when the moving party can establish, based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The moving party bears the initial burden of establishing that no genuine dispute as to material facts exists. *See Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The burden then shifts to the opposing party, to show that a genuine issue of fact exists. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The Court must first look to the substantive law of the case to determine which facts are material. Only disputes over material facts will preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

According to New York law, which governs this diversity suit, an insurer may rescind a life insurance policy where the insured, in the application for the policy, has made a material misrepresentation concerning a medical condition which would have led the insurer to refuse to make the contract had it been disclosed. *Vander Veer v. Continental Casualty Co.*, 34 N.Y.2d 50, 356 N.Y.S.2d 13, 312 N.E.2d 156 (1974); *Process Plants Corp. v. Beneficial National Life Ins. Co.*, 53 A.D.2d 214, 385 N.Y.S.2d 308 (1st Dep't 1976), *aff'd*, 42 N.Y.2d 928, 397 N.Y.S.2d 1007, 366 N.E.2d 1361 (1977); N.Y.Ins.Law § 3105 (McKinney 1985). The test for whether a misrepresentation is material "is whether a failure to furnish a true answer defeats or seriously interferes with the exercise of the insurance company's right to accept or reject the application. The major question is 'whether the company has been induced to accept an application which it *might otherwise have refused.*'" *Process Plants Corp. v. Beneficial National Life Ins. Co.*, 53 A.D.2d at 216–217, 385 N.Y.S.2d at 311 (quoting *Geer v. Union Mutual Life Ins.*

---

**2.** In their motion for summary judgment, defendants apparently make an application under Rule 56(f) of the Federal Rules of Civil Procedure for a continuance to permit further discovery. Defendants contend that Mutual Benefit has failed to provide certain information to them, including various documents and memoranda relating to Mutual Benefit's ultimate decision to deny the claim. Defendants' Memorandum of Law in Support of its Motion for Summary Judgment at 2–3. Mutual Benefit responds that it has provided defendants with all documents to which they are entitled; any undisclosed documents, Mutual Benefit asserts, are protected by the attorney-client privilege. Plaintiff's Reply Memorandum of Law at 5–7.

We decline defendants' application for a continuance to permit further discovery for two reasons. First, Rule 56(f) requires the opponent of a motion for summary judgment who claims to be unable to produce evidence in opposition to the motion to submit an affidavit explaining what facts are sought and how they are to be obtained. *Burlington Coat Factory Whrse. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir.1985). Defendants never filed such an affidavit. Instead, they first mention their inability to get adequate discovery in their memorandum of law. This is no substitute for an affidavit, and

"the failure to file such an affidavit under Rule 56(f) is by itself enough to reject a claim that the opportunity for discovery was inadequate." *Id.*

Even if we accepted defendants' application, we would deny it because defendants have not demonstrated that they have been denied reasonable access to the material requested, and that the material requested constitutes potentially favorable information. *Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248, 269 (S.D.N.Y.1987), *aff'd*, 842 F.2d 612 (1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). The parties have had ample time for discovery, yielding hundreds of pages of deposition testimony, hospital records, memoranda and other documents. Although defendants complain of inadequate discovery, they make their own extensive motion for summary judgment on the very same issue as Mutual Benefit's motion: whether Morley made a material misrepresentation. Defendants' demand for further discovery seems no more than a "fishing expedition" to avoid a grant of summary judgment against them. *Waldron v. Cities Service Co.*, 361 F.2d 671, 673 (2d Cir.1966), *aff'd sub nom. First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

*Co.,* 273 N.Y. 261, 269, 7 N.E.2d 125, 128 (1937) (emphasis in original)).

Whether there has been a misrepresentation and the materiality of that misrepresentation are usually questions of fact for the jury; however, where the evidence concerning a material misrepresentation "is clear and substantially uncontradicted, the matter is one of law for the court to determine." *L. Smirlock Realty v. Title Guarantee Co.,* 70 A.D.2d 455, 462, 421 N.Y.S.2d 232, 237 (2d Dep't 1979); *Vander Veer v. Continental Cas.,* 34 N.Y.2d 50, 356 N.Y. S.2d 13, 312 N.E.2d 156 (1974); *Process Plants Corp., supra.* A determination of materiality as a matter of law may be based on evidence of the insurer's practice with respect to similar risks, as shown by such documents as the insurer's underwriting manuals or rules, and by testimony of a qualified employee of the insurer that the insurer would not have issued the particular contract it did had the facts been disclosed. *See Wittner v. IDS Ins. Co. of N.Y.,* 96 A.D.2d 1053, 466 N.Y.S.2d 480 (2d Dep't 1983); *L. Smirlock Realty v. Title Guarantee Co.,* 70 A.D.2d at 462, 421 N.Y. S.2d at 237; N.Y.Ins.Law § 3105(c).

■ Turning to the facts before us, it is clear that Morley did not disclose five hospital stays, along with diagnoses, dates, durations, and names and addresses of all doctors and other practitioners. For at least one of these hospital stays, the diagnosis was "suicidal attempt." Defendants maintain that these omissions were not misrepresentations for two reasons.

First, defendants contend that the information was not specifically requested. They point to question 4 of the application, which asks if the applicant has, *"in the past 5 years,* ... consulted or been attended by a doctor or other practitioner?" Defendants' Depositions and Exhibits, Exhibit 2 (emphasis added). Defendants overlook the unmistakeable language of question 3(e) on the application, "Have you *ever* had nervous breakdown or mental disorder," of question 5 of the application, "Have you *ever* been to a ... hospital ...," and the overall instruction on the application to pro-vide "diagnoses, dates, durations and names and addresses of all doctors or other practitioners." *Id.* (emphasis added). The possibility that Morley may have misread the application is no defense, for "[i]t is the rule that even an innocent misrepresentation as to [the applicant's medical history], if material, is sufficient to allow the insurer to avoid the contract of insurance or defeat recovery thereunder." *Process Plants Corp.,* 53 A.D.2d at 214, 385 N.Y.S.2d at 310.

Second, defendants argue that Morley's nondisclosures were simply omissions rather than misrepresentations or "lies." This attempt to distinguish unfavorable case law is unavailing. It is well established under New York law that "the [f]ailure to disclose is as much a misrepresentation as a false affirmative statement." *Vander Veer v. Continental Casualty Co.,* 34 N.Y.2d at 52, 356 N.Y.S.2d at 14, 312 N.E.2d 156 (citing *Geer v. Union Mut. Life Ins. Co.,* 273 N.Y. at 268, 7 N.E.2d at 128 (1937)). We conclude as a matter of law that Morley misrepresented her medical history on the application.

The next question is whether Morley's misrepresentations were "material." As discussed earlier, Mutual Benefit must show that Morley's misrepresentations "interfere[d] with the exercise of [Mutual Benefit's] right to accept or reject the application." *Process Plants Corp.,* 53 A.D.2d at 216–217, 385 N.Y.S.2d at 311. In other words, Mutual Benefit must establish that it was "induced to accept an application which it *might otherwise have refused."* *Geer v. Union Mutual Life,* 273 N.Y. at 269, 7 N.E.2d at 128. Mutual Benefit need not prove that it would not have issued any policy at all to Morley; it need only show that the policy in question would not have been issued. *Mutual Benefit Life Ins. Co. v. JMR Electronics Corp.,* 848 F.2d 30, 32–3 (2d Cir.1988); N.Y.Ins.Law § 3105(b) (materiality test is whether "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make *such* contract" (emphasis added)).

Mutual Benefit has established, through affidavits and deposition testimony, that

had Morley fully disclosed her psychiatric history, she would not have received a life insurance policy. As mentioned above, given Morley's application, which disclosed only three prior hospital stays and the name of one psychiatrist, Mutual Benefit requested only an APS from the psychiatrist, Dr. Taryn Fishman. When Dr. Fishman's APS indicated that Morley's depression was in remission, Mutual Benefit's concerns about Morley's mental history were relieved, and Mutual Benefit issued the policy. See *supra* at 1049.

Faced with Morley's complete medical history, however, Mutual Benefit would have reached a different result. In his affidavit, Henry G. Heise, Mutual Benefit's chief underwriter, states that Mutual Benefit would not have issued the policy if it had known the extent of Morley's mental instability and her numerous prior hospitalizations. Heise Aff., ¶¶ 13–20. Heise explains that, faced with eight hospitalizations in a fourteen year period, Mutual Benefit would have required more information before its underwriters could have approved issuance of the policy; at the very least, Mutual Benefit would have required the discharge summaries for each of Morley's hospitalizations. Heise Aff., ¶¶ 16–18. These discharge summaries would have informed Mutual Benefit that several of Morley's hospital stays were precipitated by acute, psychotic, suicidal episodes. See *supra* at 1049; Defendants' Mem. at 26–28 (discharge summaries for 1977, 1979 and 1982 hospitalizations).

Heise's affidavit is confirmed with reference to Mutual Benefit's underwriting manual, which indicates that Morley's application would have been placed in the "IC" or "Individual Consideration" category, had the five additional hospitalizations been disclosed. Heise Aff., Exhibit 3 at E–25. Furthermore, had Morley disclosed one or more of the diagnoses of "suicide" for her hospital stays, her application would have fallen into the category "suicide attempts ... due to psychosis." If an application falls into this category, the underwriting manual mandates that the underwriter must "RFC" or "Refer [the Case] for Consideration." *Id.* at E–27. Accord-

ing to Heise, the investigation following an "IC" or "RFC" categorization would have led to the denial of Morley's application. Heise Aff., ¶ 20.

In their respective deposition testimony, both Jennifer Walker, the underwriter who issued the policy, and Dr. Bartholomew A. Ruggieri, Mutual Benefit's chief medical director when Morley applied for the policy, concur with Heise's sworn affidavit. Walker testified that she would not have issued the policy, had she known of Morley's five additional hospitalizations. Walker Dep. at 86–88. Dr. Ruggieri came to the same conclusion. Ruggieri Dep. at 43–44.

In light of the Heise Affidavit, the underwriting manual, and the depositions of Walker and Ruggieri, it seems undeniable that Mutual Benefit was "induced to accept an application which it *might otherwise have refused." Geer v. Union Mutual Life Ins. Co.*, 273 N.Y. at 269, 7 N.E.2d at 128. Accordingly, we are led to the conclusion that Morley's misrepresentations were material as a matter of law. *See, e.g., Mutual Benefit Life Ins. Co. v. Snyder*, 88 Civ. 4364, 1989 WL 16610 (S.D.N.Y. February 21, 1989) (Sand, J.) (insured's failure to disclose fully his mental history held to be a material misrepresentation as a matter of law); *Cohen v. Mutual Beneficial Life Ins. Co.*, 638 F.Supp. 695, 698 (E.D.N.Y. 1986) ("had [insured] revealed the extent of his heart condition, [insurer], under its underwriting practices, would not have issued him the policy in question"); *Friedman v. Prudential Life Ins. Co. of America*, 589 F.Supp. 1017 (S.D.N.Y.1984) (insured made material misrepresentations as to medical history); *Massachusetts Mutual Life Ins. Co. v. Tate*, 42 N.Y.2d 1046, 399 N.Y.S.2d 211, 369 N.E.2d 767 *rev'g on dissenting opinion*, 56 A.D.2d 173, 182–83, 391 N.Y. S.2d 667, 674–75 (2d Dep't 1977) (applicant materially misrepresented psychiatric history); *Process Plants Corp. v. Beneficial Life Ins. Co.*, 53 A.D.2d 214, 385 N.Y.S.2d 308 (1st Dep't 1976) (insured's failure to disclose heart disease and hypertension held to be material misrepresentation as a matter of law); *Vander Veer v. Continental Casualty Co.*, 34 N.Y.2d 50, 356 N.Y.

S.2d 13 (1974) (applicant's failure to disclose fully the extent of his heart contition held to be a material misrepresentation).

Defendants' arguments denying the materiality of Morley's misrepresentations do not lead us to a different conclusion. Defendants' main argument seems to be that Mutual Benefit would not have acted any differently if Morley had fully disclosed her medical history. In support of this argument, defendants emphasize that Mutual Benefit was already on notice that Morley was a psychotic, manic depressive, based on Dr. Fishman's APS and Morley's Lithium therapy. Since there is a suicide hazard among manic depressives, defendants assert, Mutual Benefit was also on notice that Morley was suicidal. Defendants' Mem. at 6–7. In support of these arguments, defendants point out that Morley's policy was already adjusted because of her psychosis. *Id.* at 23.

These arguments are not convincing. Even though Mutual Benefit was aware of Morley's psychosis, its concerns about Morley's mental condition were alleviated by the APS from Dr. Fishman, the only psychiatrist Morley listed. Had Morley listed her other hospitalizations, the diagnosis for those hospital stays, and the name of her attending psychiatrist during them, Dr. Kopff, who had diagnosed her to be chronically ill and suicidal, Mutual Benefit would have done a more comprehensive investigation of Morley's mental history and inevitably learned of her extensive and protacted mental illness and of her suicidal tendencies.

It is also not enough for Morley merely to have put Mutual Benefit on notice as to her mental disorder. Under New York law, "it is the applicant's duty to disclose ... every fact bearing on or pertaining in any way to the insurability of her life, especially where specific questions are put to the applicant calling for such information." *Klapholtz v. New York Life Ins. Co.*, 218 A.D. 695, 699, 219 N.Y.S. 64, 67 (1st Dep't 1926). Clearly, Morley failed in that duty, inducing Mutual Benefit to issue her a policy that it otherwise might not have issued.

Defendants' attempt to rely on *New England Mutual Life Ins. Co. v. Markman,* 652 F.Supp. 1097 (S.D.N.Y.1987) for the proposition that Mutual Benefit was already sufficiently on notice is unavailing. In *Markman,* the insured revealed that she had suffered from migraine headaches since childhood. In addition, she listed the name of her current physician and the date of her last visit with him. *Id.* at 1098. She did not disclose, however, that she had also had a brain CAT-scan three years earlier, and that she had been treated in the hospital for several months four years earlier. *Id.* The insurance company attempted to rescind the disability insurance policy it had issued, based on these undisclosed facts. Rejecting the insurance company's claim, the court held that Markman's nondisclosure were not material because the insurance already knew that she suffered from migraines since childhood. *Id.* at 1099.

*Markman* is distinguishable on its facts. Whereas Markman "in no way misrepresented the extent of her problem," *id.* at 1099, Morley clearly did not reveal the extent of her mental illness. By omitting five hospitalizations prior to the ones she listed, Morley concealed the extent of her psychosis. Morley also did not disclose that she was suicidal, the diagnosis of at least one of her hospitalizations, thereby seriously interfering with Mutual Benefit's right to issue Morley a policy at a different rating, or to deny Morley's application altogether. *See also Friedman v. Prudential Life Ins. Co.,* 589 F.Supp. 1017, 1024–25 (S.D.N.Y. 1984) (applicant's partial disclosure of heart condition did not put insurance company on sufficient inquiry notice).

Defendants also repeatedly assert that Mutual Benefit engaged in "lax and sloppy underwriting," *see, e.g.,* Defendants' Mem. at 19, because it did not thoroughly investigate Morley's background at the time of the application. For example, defendants argue, if Mutual Benefit had investigated further by asking for discharge summaries from the hospitalizations Morley listed, it would have discovered Morley's other hospital stays and her suicidal tendencies. De-

fendants accuse Mutual Benefit of "underwriting at the claim stage." *Id.* at 34.

■ Under New York law, however, the insurance company is entitled to rely on the representations made by the applicant on the application. *Cherkes v. Postal Life Ins. Co.,* 285 A.D. 514, 138 N.Y.S.2d 788, 790 (1st Dep't 1955), *aff'd,* 309 N.Y. 964, 132 N.E.2d 328 (1956). *See also Friedman v. Prudential Life Ins. Co.,* 589 F.Supp. 1017, 1024 (S.D.N.Y.1984) (insurer is not required to verify medical records); *Kantor v. Nationwide Life Ins. Co.,* 16 A.D.2d 701, 227 N.Y.S.2d 703 (2d Dep't 1962) (insurer may rely on application, with no duty to inquire); *Metropolitan Life Ins. Co. v. Blum,* 7 A.D.2d 488, 491, 184 N.Y.S.2d 455, 458 (1st Dep't), *reargument denied,* 8 A.D.2d 782, 187 N.Y.S.2d 978 (1959), *aff'd,* 9 N.Y.2d 954, 217 N.Y.S.2d 225, 176 N.E.2d 202 (1961) (insurer is not required to verify medical records that the insured has represented were negative as to the diseases and infirmities it inquired about). Thus, Mutual Benefit was under no duty to conduct an investigation beyond its routine underwriting practices in evaluating Morley's application.

Relying on Morley's misrepresentations, Mutual Benefit issued her a policy it otherwise might not have, had she fully disclosed her mental history. Therefore, we conclude that Morley's misrepresentations are material as a matter of law.

Accordingly, Mutual Benefit is entitled to summary judgment and an order rescinding the policy, and the case is otherwise dismissed. Mutual Benefit is directed to submit, on notice, judgment for entry by the Court.

SO ORDERED.