The **NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**, Plaintiff,

v.

**Pierre DeMALLERAY, Defendant.**

**No. 88 Civ. 4211 (JES).**

United States District Court,
S.D. New York.

April 27, 1992.

---

Schader, Harrison, Segal & Lewis (Peter Jason, of counsel), New York City, for plaintiff.

Kantrowitz & Goldhamer, P.C. (Amy Litman, of counsel), Chestnut Ridge, N.Y., for defendant.

MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Defendant in the above-captioned action moves to vacate a default judgment entered on September 12, 1988 pursuant to Fed.R.Civ.P. 60. On September 19, 1991, this Court held an evidentiary hearing on defendant's motion to vacate and found that service of process was proper.[1] *See* Order dated September 19, 1991. On November 12, 1991, this Court then heard Oral Argument on the issues of timeliness of defendant's motion to vacate and whether defendant has a meritorious defense to the action. For the reasons that follow, the defendant's motion to vacate the default judgment is denied.

BACKGROUND

On July 2, 1986, Pierre DeMalleray ("DeMalleray") applied to Northwestern Mutual Life Insurance Company ("NML") for a disability income insurance policy and a disability overhead expense policy. In his application for the policies, defendant made various representations, including that in 1985, his gross earned income was $387,000, his net insurable income was $259,000, and his estimated insurable income for 1986 was $323,999.60. *See* Transcript ("Tr."), dated September 10, 1991 at 39 & Plaintiff's Hearing Exhibit ("Pl.Hr.Ex.") 6. Defendant also represented that within the past five years he had not been examined, advised or treated by any physician or practitioner other than Dr. Claude Forkner and that he had not received any medical testing except in connection with an examination by Dr. Forkner in December 1985. *See* Pl.Hr.Ex. 6. At the conclusion of the underwriting process, which included ob-

1. Defendant first argued that the judgment is void under Fed.R.Civ.P. 60(b)(4) for lack of in

taining reports from Dr. Forkner,[2] NML issued the policies with certain exclusions. *See* Defendant's Notice of Motion to Vacate Default ("Def.Not.") at Ex. F.

In November 1986, DeMalleray filed a request for disability benefits under the policies, claiming that he had become totally disabled from arthritis. *See* Pl.Hr.Exs. 15 & 16. NML initiated a routine investigation of defendant's claim, during which NML received a financial statement as well as what was represented to be defendant's 1985 income tax return, both of which were fully consistent with the financial representations defendant had made in his insurance application. *See* Pl.Hr.Exs. 11 & 14. In March 1987, NML paid defendant $27,000 in disability benefits on an accommodation basis, pending completion of its investigation. *See* Affidavit for Judgment by Default at ¶ 3; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate Default Judgment ("Pl.Opp.") at 5.

In April 1987, NML received a report from Dr. Leon Root which stated that defendant had tested HIV III positive. *See* Pl.Opp. at 6; Def.Not. at ¶ 17. When questioned about this information, DeMalleray told NML's agent that he did not recall ever being tested for HIV III and that he did not recall mentioning it to Dr. Root. *See* Def.Not. at ¶ 16; Pl.Opp. at 6. Over the next several months, NML attempted to obtain more complete financial and medical information from defendant but was unsuccessful. *See* Pl.Opp. at 6–7. Consequently, NML commenced this action to rescind the policies and to recover the $27,000 paid to the defendant, alleging that DeMalleray had made material misrepresentations as to his income and as to a preexisting medical condition. Defendant failed to appear and this Court entered a default judgment on September 12, 1988.

## DISCUSSION

Defendant first argues that the default should be vacated on the ground of defendant's lack of "actual knowledge of an action against him." *See* Memorandum of Law in Support of Motion to Vacate Default at 9. However, that contention is without merit because this Court has already found, after a full hearing, that DeMalleray was properly served and is therefore deemed to have notice of the claim against him. *See* Tr. at 157.

In any event, defendant has failed to meet the criteria established by this Circuit for determining whether a Rule 60(b) motion should be granted.[3] In applying Rule 60(b)(1), "courts have gone beyond the bare wording of the rule" and established certain criteria which should be considered in deciding whether a default should be vacated. *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983). These criteria include (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted. *Id.* at 915; *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 507 (2d Cir.1991).

personam jurisdiction.

2. NML obtained reports from Dr. Forkner and Dr. Leon Root, whose treatment NML learned of through Dr. Forkner.

3. It should be noted that this motion was filed two months after the one year time period set forth in Rule 60(b) had expired, although a Pre-Trial Conference was held with respect to that motion one day before the expiration of that period. However, since the Court has concluded that defendant's motion must be denied on the merits, the Court need not reach the merits of defendant's claim that the motion should be regarded as timely because at that Pre-Trial Conference the Court instructed him to put all his alleged arguments for vacating the default in one motion, including the motion based on lack of personal jurisdiction which he was then allegedly ready to file. Defendant also attempts to characterize his motion as a claim under 60(b)(6), which allows a claim for "any other reason justifying relief from the operation of the judgment" to be brought within a reasonable time. Fed.R.Civ.P. 60(b)(6). Plaintiff contends, however, that since the circumstances relied on as the basis for defendant's motion are encompassed in the terms "mistake, inadvertence, surprise or neglect applicable under Rule 60(b)(1), they may not also serve as a predicate for (b)(6) relief." *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne,* 605 F.2d 648, 656 n. 8 (2d Cir.1979). The Court likewise need not resolve this dispute because, in any event, defendant has not established that he has a meritorious defense.

Defendant argues that his default was not willful because service was made on his estranged wife at a residence that he had abandoned in July 1986. This contention is contradicted by the uncontroverted evidence establishing that defendant listed this same address as his domicile in numerous communications with NML subsequent to July 1986, and indeed, listed this address on an official application for a French passport in October 1986, four months after he claims to have abandoned his New York residence. *See* Pl.Hr.Exs. 15, 16 & 9; Tr. at 129–30.

Moreover, the Court is unpersuaded as to the merits of DeMalleray's defense. Defendant asserts that his misrepresentation as to his income cannot be found to be material as a matter of law.[4] However, New York Insurance Law § 3105(b) states that a misrepresentation shall be material if the misrepresentation would have led to a refusal by the insurer to issue the specific policy it issued. New York Ins. Law § 3105(b) (McKinney 1985). Furthermore, under applicable New York law, although materiality is ordinarily a question of fact, "where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32 (2d Cir.1988) (quoting *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214, 216, 385 N.Y.S.2d 308, 310 (1st Dep't 1976), *aff'd mem.*, 42 N.Y.2d 928, 366 N.E.2d 1361, 397 N.Y.S.2d 1007 (1977)). In this case, DeMalleray represented his insurable income for 1985 to be $259,000, *see* Pl.Hr.Ex. 6, when in fact his actual insurable income was zero.[5] *See* Pl.Opp. at 5. Since NML's established company policy regarding disability insurance clearly mandated that no such insurance would issue absent at least $10,000 in insurable income, *see* Affidavit of Patricia D. Westphal (Sworn to Oct. 16, 1991) at 4 & Ex. A, the misrepresentation here was material as a matter of law.[6]

Finally, NML would be prejudiced if the default is vacated. To establish prejudice, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. *Davis*, 713 F.2d at 916. The vacation of the default judgment would prejudice NML because DeMalleray testified at his deposition that he has no records concerning his 1985 income. *See* Affidavit of Peter Jason ("Jason Aff.") (sworn to Oct. 17, 1991) at Ex. A, p. 89. Moreover, DeMalleray's accountant testified that all records have been sent to a warehouse and probably have been destroyed. *See* Jason Aff. at Ex. C, pp. 19–20. Thus, since there is a substantial likelihood that relevant evidence is now unavailable which may have been available had the motion to vacate been filed sooner, prejudice to the defendant is sufficiently established.

## CONCLUSION

Accordingly, the defendant's motion to vacate the default judgment shall be and

4. It is interesting to note that at first defendant claimed that he did not misrepresent his income, a claim which the Court rejected based upon the evidence elicited at the hearing.

5. Insurable income equals earned income less tax deductible business expenses and unearned income in excess of $5,000. According to the actual 1985 tax return that defendant filed, DeMalleray's earned income was only $3,610 in 1985, with tax deductible business expenses of nearly $500,000 and unearned income of $324,016. *See* Pl.Opp. at 5.

6. Questions remain regarding whether defendant misrepresented his medical history. For example, in response to questions seeking information concerning his medical history on the insurance application form, defendant did not disclose treatment by Dr. Leon Root. Moreover, although defendant was informed of Dr. Root's report indicating that he had tested positive for HIV III and was offered an opportunity to refute it as early as 1987, he chose to do nothing for more than two years. Upon finally addressing the issue, defendant admits to treatment by Dr. Root and simply claims that he does not recall that any tests were performed or why Dr. Root would submit such a test to NML. *See* Def.Not. at ¶¶ 16 & 17. In addition, defendant submitted contradictory test results obtained from a Dr. Alain Nys on October 10, 1986 and a Dr. P. Flottes on October 26, 1988. *See* Def.Not.Exs. C & D. These questions need not be resolved, however, in light of the clearly material misrepresentations as to defendant's insurable income.

hereby is denied. The Clerk of the Court is directed to close the above-captioned action.

It is SO ORDERED.