In the Matter of the Accounting of GUARANTY TRUST COMPANY OF NEW YORK, as Trustee under the will of JAMES R. BREVOORT, Deceased. (Two Proceedings.)

Surrogate's Court, Westchester County, September 9, 1947.

*Hall, Cunningham & Haywood* for President and Directors of Manhattan Company, as executor under the will of Florence B. Eickemeyer, deceased, petitioner.

*Arbuckle & Miles* for trustee.

*Bleakley & Harding* for Everett B. Kurtz and others, respondents.

*Richard Edie, 3d,* for St. John's Riverside Hospital, respondent.

*Saxe, Bacon & O'Shea* for trustees of Columbia University, respondents.

GRIFFITHS, S. The will of the above-named decedent, admitted to probate in this court on December 20, 1918, created a trust fund of one half of his residuary estate, with income payable to his son, Victor Brevoort, for life, remainder to his son's issue, if any, and in default of issue to decedent's daughter, Florence E. Brevoort (Eickemeyer), if living at the death of Victor, and gift over of the remainder to St. John's Riverside Hospital and to Anson Baldwin, a son-in-law, if the said Florence B. Eickemeyer predeceased Victor. Anson Baldwin died in May of 1920. The inventory value of the corpus of the trust, as shown by the account filed herein, was $93,000. There is accumulated income of over $25,000. The Guaranty Trust Company of New York is the trustee.

Florence B. Eickemeyer died on December 20, 1940, leaving a will admitted to probate in this court under which the Bank of Manhattan qualified as executor. An adjudication is sought to determine whether Victor Brevoort is dead and, if so, the time of his death. Disposition of the corpus and accumulated income in the estate of James R. Brevoort depends not only

on the question as to whether Victor Brevoort is now dead, but whether he died before his sister on December 20, 1940.

Similar proceedings were instituted in this court by Mrs. Eickemeyer in 1939 and the issues were tried before the late Surrogate MILLARD. The application at that time to declare Victor Brevoort dead was denied for the reasons stated in the court's opinion (19 N. Y. S. 2d 985).

In 1937 Victor Brevoort was fifty-nine years of age and a bachelor. His closest relative was his sister. He was a resident of Miami, owned a residence there, and employed a housekeeper by the name of Mrs. Wilson. He was not engaged in any business and his only income was from the trust fund above described, which yielded between $5,000 and $6,000 yearly.

On June 13, 1937, Victor Brevoort, by a letter, notified the Guaranty Trust Company that he would not be in a position to receive and deposit income checks for several months and asked the company to withhold income for a period of six months beginning July 1st, stating that after that period his Miami, Florida, address would apply. The trustee has not heard from him since.

The last communications received from Victor Brevoort, as far as the testimony indicates, are two letters dated August 5, 1937, one to his sister, and one to Mrs. Wilson, his housekeeper, in which he stated that he intended to depart for the Azores and that he would communicate with Mrs. Wilson upon his arrival. There is no evidence of anyone's having seen him after August 23, 1937, at which time a yawl, hereinafter described, with one man on board, was seen in the Atlantic Ocean on a course between the city of Boston and the Azores.

In 1936 Victor Brevoort ordered an auxiliary yawl from John G. Alden, of Boston, Massachusetts. It was designed for long voyages, could carry water for 150 to 200 days and stores sufficient for a six-month period for one man. It was built for one-man operation and was delivered in July of 1936. It was named "Cygnet", which name was printed on the stern, together with the home port of Miami. The planking was of Philippine mahogany, a variety of cedar, and her mast was of "pitch pine". She bore two metal plates, one with the inscription "Designed by John G. Alden, Boston, Mass. No. 616-G", and the other with the inscription "Morse Boatbuilding Corp. Builders Thomaston, Me." She bore the customs' registration number 18J316, which was painted on either side of the bow. The steering gear was made by Columbia Bronze

Corporation of Freeport, Long Island, which name was cast on the gear box.

In July or August of 1937 a representative of the firm of builders went aboard the yawl at the owner's request to make a final checkup. It was then at the Boston Yacht Club in Boston harbor. At that time the gasoline tanks were full and the water tanks were being filled and the boat had a lot of stores aboard. Victor Brevoort stated at that time that he expected to leave the next morning, specifying no particular destination, although he mentioned the Azores and also discussed Spain, the coast of Portugal, the Balearic Islands on the south coast of Spain, and the Mediterranean. Several days later when this man passed the place of mooring, he noted that the yawl was gone. He has not heard from Victor Brevoort since. On August 2, 1937, Victor Brevoort received a passport viséed by the Portuguese Consul in Boston, for travel to the Azores and Madeira.

On August 23, 1937, a ship named the "Athelfoam" sighted the *Cygnet* about 900 to 1,000 miles east of Boston and about the same distance west of the Spanish coast. The officers of the Athelfoam hailed a man sitting in the stern of the *Cygnet*, which was stopped about fifty feet away. Only one occupant could be seen on the *Cygnet* and he is described in a manner that fits the description of Victor Brevoort. The man on board the *Cygnet* took no notice of the concern apparently existing for his welfare by the personnel of the Athelfoam and simply waved his hand.

On the night of December 15, 1937, a Spanish Investigating Judge, after receiving a report that a signal for help had been received during a storm, found that a vessel had been destroyed; that it was a vessel that had a mast and only one sail; that on the beach were found parts of a vessel. The parts so found clearly were the remains of the yawl built as above described upon orders of Victor Brevoort.

Since the time that Victor Brevoort was last seen in Boston, or, possibly, at sea as hereinbefore described, he has not been heard from either by the trustee, by his sister, by his housekeeper, or by anyone else, as far as the evidence shows. Inquiries made by Mrs. Eickemeyer, his sister, of various government agencies, police departments and through newspaper publicity have elicited no information. Letters to the American consuls at the Azores, Bermuda, Gibraltar, Lisbon, etc., have all been unsuccessful in producing any knowledge of the whereabouts of Victor Brevoort. Inquiry was made at the

principal ports of entry in the Azores and failed to reveal any evidence of the arrival at any such ports of Victor Brevoort. The executrix named in the will of Victor Brevoort applied for probate of such will in Florida, and it was admitted to probate on June 16, 1938.

Under the facts set forth, the court must determine whether, upon the evidence, Victor Brevoort must now be presumed dead, and if so, as nearly as possible the date of his death.

Upon the evidence the court has no doubt that Victor Brevoort departed from Boston Harbor on his yawl, the "Cygnet" in the early part of August, 1937, and was seen upon this same boat on August 23, 1937, approximately 900 to 1,000 miles east of Boston on a route to the Azores and at a point about midway from the Azores, a distance of approximately 2,100 miles from the Spanish coast. Nor is there any doubt in the mind of the court that it was this same yawl which was wrecked off the Spanish coast during or following a storm about the 15th day of December, 1937.

Section 341 of the Civil Practice Act provides as follows: "§ 341. *Presumption of death in certain cases.* A person possessed of personal property in this state or upon whose life an estate in real property depends, who remains without the United States, or absents himself in the state or elsewhere for seven years together, is presumed to be dead, in an action or special proceeding concerning such property or the administration of the estate of such person, unless it is affirmatively proved that he was alive within that time."

The evidence before the court is sufficient to establish, and the court finds, that Victor Brevoort is now dead. (*Butler* v. *Mutual Life Ins. Co.,* 225 N. Y. 197.) The only controversial question is the time of his death. It is now the rule that seven years' absence creates a presumption that death occurred at the end of that period. (*Connor* v. *New York Life Insurance Co.,* 179 App. Div. 596.) And although the presumption of death from unexplained absence would not arise until the end of the seven-year period (*Matter of Chancellor,* 178 N. Y. S. 832), a finding that death occurred before the expiration thereof may be made where the facts clearly establish its occurrence in some identified disaster. (*Connor* v. *New York Life Insurance Co., supra; Matter of Miller,* 67 Misc. 660; *Eagle* v. *Emmet,* 4 Bradf. 117.) The presumption of death at the expiration of the seven-year period obtains only by the necessity of the case in the absence of sufficient proof to establish its occurrence at some earlier time. (*Connor* v.

*New York Life Insurance Co., supra.*) And a finding of death may be made even though the proceeding in which such determination is sought is instituted prior to the expiration of the seven-year period, if the facts clearly establish that death occurred in some specific peril. For example, where the absentee is known to have been on a vessel which is long overdue without communication from anyone on board, a finding has been made that death occurred at the expiration of the period equal to twice the usual duration of the voyage, notwithstanding that the seven-year period had not expired when the adjudication was made. (*Gerry* v. *Post,* 13 How. Prac. 118; *Oppenheim* v. *Wolf,* 3 Sandf. Ch. 571; *Merritt* v. *Thompson,* 1 Hilt. 550.) Accordingly, more conclusive evidence will be required to support the finding of death when the party seeking such determination is unaided by the presumption arising from seven years' absence.

In *Connor* v. *New York Life Insurance Co., (supra)* it appeared that clothing belonging to a man was found in a bathhouse at a bathing beach and his jewelry was found in the office of the bathing establishment. There was also evidence that he had disappeared and had been absent for seven years. The Appellate Division held (p. 598) that although it was the rule that a seven years' absence creates a presumption that death took place at the end of the period " * * * reason and probability require that the rule be modified so that if a seven years' absence follows a catastrophe, occurrence or hazard whereby the absent one was subjected to peril of his life of such a character that the evidence of his death might be destroyed with death itself — as for instance death in a conflagration, or by drowning — the inference of fact may be drawn that the death occurred at the time of such peril. * * * When there is such evidence, the necessity for presuming that death occurred at the end of the period no longer exists."

The evidence fairly establishes that Victor Brevoort was on the *Cygnet* when it was sighted on August 23, 1937, and at the time of its wreck and loss on December 15, 1937. If he reached the Azores, or some other intermediate port en route, inquiries at probable places of arrival have not revealed either the arrival of the *Cygnet* or its presence at any such places. Moreover, he neither notified his housekeeper of his arrival, pursuant to his statement to that effect, nor did he communicate with the trust company from which he had been receiving his only source of income. The speed with which the first

part of the journey was made is not necessarily any criterion as to the progress made thereafter. Unfavorable winds or weather, boat trouble, or his own physical condition may have delayed his arrival. He had stated that he expected two months would be required to reach the Azores, and the Spanish coast was much farther. He had mentioned the coast of Spain and Portugal as well as the Azores and the Balearic Islands as probable ports of destination and had indicated that he had provisioned his ship for a long trip. It is obvious that he contemplated not only a long but a precarious voyage.

Upon all the evidence the court is of the opinion and so finds that Victor Brevoort met his death, leaving no issue him surviving, on or about December 15, 1937, at the time that his yawl was destroyed off the coast of Spain.

Settle decree.