Hattie CLARKE, Thelma Batiste, and Van B. Henderson, Libelants,

v.

STATES STEAMSHIP COMPANY, a corporation, the Doe Company, Respondents.

No. 27193.

United States District Court
N. D. California, S. D.

June 1, 1956.

Gladstein, Andersen, Leonard & Sibbett, San Francisco, Cal., for libelants.

John H. Black, Edward R. Kay, San Francisco, Cal., for respondents.

ROCHE, Chief Judge.

This is a libel brought by the surviving brother and sister of a deceased seaman to collect a $5,000 death benefit provided under an insurance policy covering all members of the crew and provided by the shipowner. This policy was patterned after the insurance provided for seamen aboard government owned vessels, 46 U.S.C.A. § 1281 et seq., and contains identical provisions. A substantial number of claims for death benefits based on said insurance policy have been paid to the beneficiaries of the crew members of the ship.

The facts of this case are as follows:

On January 9, 1952, the S. S. Pennsylvania owned by the respondent, States Steamship Company, was in the North Pacific in the midst of one of the heaviest storms on record. After receipt of certain messages by radio from the ship to shore the vessel was never seen again and the members of the crew disappeared.

On January 23, 1952, an action was commenced in the Oregon District Court, the action being entitled, "In the Matter

of the Petition of States Steamship Company, For Exoneration from or Limitation of Liability," No. 6300 In Admiralty. Claims were filed in the limitation proceeding on behalf of cargo underwriters, and the court took testimony both orally and by way of deposition. The facts, as recited from that hearing, are as follows:

1. The S. S. Pennsylvania left Seattle January 5, 1952;

2. On January 7, storm encountered;

3. Storm abated January 8;

4. On January 9, larger storm encountered; on January 9, first message received from vessel to Coast Guard to effect that there was a crack down the vessel on the port side;

5. Message that there was a crack down the side of the vessel between frames 93 and 94; starting to turn about to proceed to Seattle as soon as possible; next message—hull cracked 14 feet down port side into engine room, vessel taking water in hold and engine room; next message—indicates taking water No. 1 hold, vessel, down by head, cannot steer or get forward to see trouble; next message—an S O S—indicating vessel taking water in engine room and in hold, and vessel down by head;

6. Various other messages from vessel to Coast Guard indicating condition of vessel and the fact that vessel was taking water;

7. Last Message received indicated steering rudder gone, hatch number 2 full of water, hold full of water. Looks like we have to abandon ship. Forty-five persons aboard, four boats. Leaving now.

Various depositions were taken from Masters of vessels in the vicinity, in which it was stated: "I have never seen any storm of that violence in all the time I have been at sea"; another Captain stated, "I can say, without reservation, that this storm was the worst I have ever witnessed." The evidence discloses that the weather was so stormy that rescue ships were unable to render assistance.

Much correspondence took place between the alleged beneficiaries (plaintiffs herein) and the States Steamship Company. The purpose of reviewing this correspondence is to show that there was knowledge of the fact that Second Seamen's War Risk Policy was in effect and that there were certain rights to be determined concerning who was entitled to benefits under same. On January 19, 1952, a telegram was dispatched to Jennie Holmes, advising that the U. S. Coast Guard abandoned further search for survivors of the Pennsylvania and it was presumed that Rufus Holmes was lost at sea; on January 21, 1952, a letter to Jennie Holmes, advising of the same fact; letter of February 4, 1952, advising Mrs. Edgar Perry of fact of Second Seamen's War Risk Policy in response to letter of January 28, 1952; a claim was sent to Jennie Holmes and returned, showing that Thelma H. Batiste, one of the libelants, filled out claim form; various correspondence through March, April, May and June 1952, concerning Second Seamen's Risk Policy; second claim, February 23, 1955, filed by Thelma Batiste on behalf of libelants, action filed in the United States District Court on August 30, 1955.

The policy, among other things, provided in article 22 that no action or suit upon the policy would be valid unless commenced within 2 years from the time the insurance benefits or allowances conferred by the policy are payable, etc., and the policy, further provided in article 10 that unless extended by the provisions hereinafter contained, payment of the insurance for loss of life shall be made, within 90 days after the death of the insured is established in a manner satisfactory to the administrator, etc.

The respondents as a plea in bar of this action raise the Statute of Limitations, claiming that the requirement of the insurance policy that suit be filed within two years from the date benefits are payable bars the instant action because it was not filed until August 30, 1955.

Libelants introduced into evidence a certified copy of a decree of the Surrogate's Court, County of Kings, State of New York, dated October 8, 1954, which decree, among other things, declared Holmes to be dead. This decree was obtained in connection with the appointment of an Administratrix of Holmes' estate.

Libelants cite authorities to the effect that where there is an unexplained absence the period of 7 years must elapse before death can be presumed and also that death does not arise until the body is found. Olson Marine Supplies of Norfolk v. Fidelity-Phenix Fire Ins. Co., D.C., 94 F.Supp. 726; In re Brevoort's Will, 190 Misc. 328, 73 N.Y.S.2d 216; Benjamin v. District Grand Lodge, etc., 171 Cal. 260, 152 P. 731. However, the rule has been clearly announced both in California and Federal cases that there is a presumption of death seven years after the date of disappearance unless from the facts and circumstances, including a specific peril which might be expected to destroy life, it reasonably appears that in all probability he died sooner. Then the presumption that death did not occur until the latter date (seven years) is overcome, it being permissible to establish a definite date by circumstantial evidence. Fidelity Mutual Life Ass'n v. Mettler, 185 U.S. 308, 22 S.Ct. 662, 46 L.Ed. 922; The San Rafael, 9 Cir., 141 F. 270; Lesser v. New York Life Ins. Co., 53 Cal.App. 236, 200 P. 22; Rogers v. Manhattan Life Ins. Co., 138 Cal. 285, 71 P. 348; Western Grain & Sugar Products Co. v. Pillsbury, 173 Cal. 135, 159 P. 423. The circumstances and facts in this case indicate beyond a reasonable doubt that death occurred to all members of the crew of the S. S. Pennsylvania on January 9, 1952.

Therefore the instant action is barred by the limitations contained in the policy of insurance and it is hereby

Ordered that the libel and action herein be Dismissed. The respective parties to pay their own costs.