OPINION OF THE COURT
Evans V. Brewster, S.
In this probate proceeding, petitioner seeks at the outset a determination by the court pursuant to EPTL 2-1.7 that the testator is dead.
There is no controversy with the facts concerning the disappearance of the alleged decedent. Lester I. Conrad who had a home in the Berry Islands of the Bahamas was making arrangements to move to West Palm Beach, Florida, since the Bahama government gave notice that it would enforce the law that prohibited boats of nonnatives from remaining for a period of more than six months at a time. Conrad owned a 45-foot Hatteras yacht with twin diesel engines, fully equipped, had a single side bar radio with a range of many hundreds of miles, a radar, automatic pilot, with safety devices including flare signals, a barrel-shaped raft, life preservers and a floating flashing light device to give notice of location if the boat submerged.
At a social gathering, one Walter Falconer volunteered to act as the crew for the crossing from Great Harbor Cay to West Palm Beach, a trip which Conrad had done many times and that generally took about 8 hours but could take up to 10 or 12 hours if the weather conditions or sea were not favorable. Plans were made to leave early on April 2, 1980 and a neighbor, Dick Farmer, agreed that he would *757 leave his radio in operation during the crossing so that there could be radio communication at all times and that a message would be sent by Conrad every hour on the hour.
There was a delay in leaving on April 2 because a small leak in the oil gauge was found but that was fixed, and Conrad and Falconer left at about 10:30 a.m. At noon time, the first message came from Conrad that the sky was overcast but that the ride was comfortable and the sea fine. He also inquired if his wife had called a friend, Frances Carr, to arrange for dinner that evening at West Palm Beach and was assured that the appointment had been made.
At 12:45 p.m. Conrad was heard speaking on his radio to a Captain Jim Turner who was completing his crossing from the opposite direction and Conrad inquired as to sea conditions in the Gulf Stream. Turner reported that the Gulf Stream was choppy and uncomfortable and Conrad said that if the sea got bad, he would put in at Freeport or Bimini. No one was alarmed because there was no radio call at 1:00 p.m. since Conrad had spoken just a few minutes earlier. That, however, was the last communication received from Lester Conrad.
When there was nd radio call at 2:00 p.m. or thereafter, there was growing concern and alarm and friends and neighbors on Great Harbor Cay were alerted to listen for signals from Conrad. Both the neighbor Farmer and Captain Turner kept their radios on at all times. Mrs. Carr was called in West Palm Beach and told not to go to the marina to meet Conrad as no word had been received from him. Mrs. Carr kept in touch with the marina and called the Coast Guard at 9:00 p.m. and reported the facts on the trip and that Conrad was missing.
The Coast Guard alerted all mariners to be on the lookout for Conrad’s boat but could not go out on a search until the following day. The Coast Guard, by both ship and plane, conducted an exhaustive search of the sea area for five days from April 3 to April 8 ranging from the tip of Florida to the Carolinas but found nothing.
Mrs. Conrad in the meantime had also been busy conducting a search for the missing persons. The Bahamian *758 Air Sea Rescue Association was contacted and searched the waters without success. Mrs. Conrad also hired a private plane and with the pilot and Mrs. Carr conducted a search to no avail. Private investigators were hired, a reward of $25,000 was posted and even psychics were consulted but no trace or even rumors about the missing men resulted. The insurance company, without conducting an examination, paid out $99,000, the value of the boat, for its loss.
At the hearing, a number of witnesses testified to the close and happy relationship between Mr. and Mrs. Conrad and their children and grandchildren. He had no financial problems, was easygoing, good humored and not depressed and looked forward to future travel plans with his wife. It was also noted that Walter Falconer, the person with Conrad, has already been declared dead by a court having jurisdiction of his estate in Pennsylvania.
From the evidence presented, the court would have no hesitation in finding that Lester Conrad is dead if a period of five years had elapsed since his disappearance. The question presented is whether it can be so determined before that time. EPTL 2-1.7 (subd [a], par [1]) provides that the fact that such a person “was exposed to a specific peril of death may be a sufficient basis for determining that he died less than five years after the date his absence commenced.”
At common law, it was presumed that a person who has been continuously absent from his home or place of residence and unheard from by those whom, if he had been alive, would naturally have heard from him, for a period of seven years, was dead. The courts, however, did not require any specific period of time to elapse to create the presumption of death where the facts of the case warranted such a finding (Connor v New York Life Ins. Co., 179 App Div 596; Matter of Brevoort, 190 Misc 328). The perils of the sea were often cited as the underlying reason to presume death in maritime causes, and “[i]f the party whose death is in question went to sea, and nothing has been heard of the vessel in which he left or of those who went in her, the presumption, after a sufficient length of time has ensued, will be that the vessel was lost, and that all on board of her perished.” (Merritt v Thompson, 1 Hilt 550, 553, and cases *759 cited.) Where, when last heard from, one was in contact with some specific peril, this circumstance may raise a presumption of death, without regard to the duration of the absence. (Lancaster v Washington Life Ins. Co., 62 Mo 121; White v Mann, 26 Me 361.) In Merritt v Thompson (supra) it was held that the presumption of death does not rest upon the fact that the party had not been heard from for 17 months, but on the weightier circumstance that the vessel had not been heard from. In Gerry v Post (13 How Prac 118, 120) it was held that, if “a vessel [has been] absent double the longest time of a voyage, [she] may be presumed to be lost; and it follows, as a consequence, that *** all perished with her, if none of the passengers or crew are afterwards heard of.” (Matter of Stewart, 1 Connoly 86.) These principles of law remain unchanged. The basic judicial principle has been codified and now is enacted as EPTL 2-1.7.
It appears to the court that the doctrine of “perils of the sea” should be applied to the facts of the present case. When Lester I. Conrad, a man in his late 60’s, retired, in good financial circumstances, who is very close to his family and friends, and has no health, social or legal problems, disappeared on a sea voyage from the Bahamas to Florida, the only logical conclusion is that he met his death through some accident at sea. Accordingly, the court determines that Lester I. Conrad is dead and that he died on April 2, 1980.
Inked corrections appear on pages 1, 18 and 19 of the propounded instrument correcting the spelling of the same name, all of which are initialed with testator’s initials and all of which are in the same color ink as the name of the testator signed on the bottom of each page. Under the circumstances existing, the court finds that the changes were made prior to execution and therefore are effective.
. Upon the evidence submitted, the propounded instrument appears to have been duly executed in accordance with statutory requirements. The competency of the decedent to make a will and his freedom from restraint have been established. Therefore, the propounded instrument dated March 17, 1972 will be admitted to probate as the will of the decedent in accordance with this decision.