**Juliette B. SAINT CALLE and Raymond Basili, Plaintiffs,**

**v.**

**PRUDENTIAL INSURANCE COMPANY OF AMERICA and John Hancock Variable Life Insurance Company, Defendants.**

**No. 90 Civ. 0045 (MBM).**

United States District Court, S.D. New York.

Feb. 22, 1993.

Vincent Anzalone, Anzalone & Leschins, Bronx, NY, for plaintiffs.

Edward D. Greenberg, Robert A. Santucci, Schwartz & Greenberg, New York City, for defendant Prudential Ins. Co. of America.

Richard R. Lutz, Joan B. Gross, Townley & Updike, New York City, for defendant John Hancock Variable Life Ins. Co.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs seek to recover life insurance proceeds of five policies issued by defendants to an insured who plaintiffs allege died in a car accident in Haiti. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

Defendants dispute that the insured is dead and move for a summary judgment that plaintiffs may not collect proceeds from the policies now. Alternatively, defendants allege that the insured misrepresented material facts in the applications for two policies, and cross-claim to rescind those two policies. Defendants move also for summary judgment as to plaintiffs' claims for certain accidental death benefits and for punitive damages.

For the reasons stated below, defendant John Hancock's motions are granted, and it is dismissed from these proceedings. Defen-

dant Prudential's motions are granted in part and denied in part, as described below.

## I.

Plaintiffs began this action in December 1989 to recover life insurance proceeds from five policies issued by defendants to Jean B. Saint Calle as the insured. Plaintiff Saint Calle, the insured's wife, and plaintiff Basili, a creditor of the insured, are each New York residents. (Am.Compl. ¶¶ 1, 2) Defendant Prudential is an insurance company headquartered in Newark, New Jersey. (Am. Compl. ¶ 5) Defendant John Hancock is an insurance company headquartered in Boston, Massachusetts. (Am.Compl. ¶ 6)

The policies at issue are in face amount greater than $1 million:

| Policy No. | Company | Face Amount | Date Issued |
| --- | --- | --- | --- |
| VL 689777 | John Hancock | $260,000 | March 3, 1987 |
| 72 741 770 | Prudential | $ 30,000 | September 4, 1987 |
| 72 741 282 | Prudential | $260,000 | November 20, 1987 |
| 72 785 430 | Prudential | $250,000 | June 13, 1988 |
| 72 860 691 | Prudential | $351,000 | February 6, 1989 |

The $260,000 Prudential policy contains an Accidental Death Benefit of an additional $260,000. (Greenberg Aff. Ex. C)

The beneficiaries of the $30,000 Prudential policy are creditors of the insured, including plaintiff Basili. (Anzalone Aff. ¶ 5) The sole beneficiary of the other four policies is plaintiff Saint Calle, the insured's wife. (Anzalone Aff. ¶ 4)

Both plaintiff Saint Calle and the insured were born in Haiti, but the insured had not returned to Haiti for 15 years prior to his disappearance. (Saint Calle Aff. ¶ 6) Plaintiff Saint Calle met the insured in early 1982; they had lived together since January 1985. (Id. ¶ 2) They had a daughter, born in June 1983, and a son, born in June 1987. (Id. ¶ 4) The insured owned and managed a vacuum cleaner distributorship which employed 25 salespersons. (Id. ¶ 5) He held substantial assets, including a home, certain business property, and the policies described above. (Id. ¶ 5) At the time of his disappearance, he was 25 years old. (Gross Aff. Ex. A)

On or about January 6, 1989, the insured's family vacationed in Haiti for four days. (Saint Calle Aff. ¶ 6) After they returned from Haiti, on January 21, 1989, plaintiff Saint Calle and the insured were married. (Id. ¶ 4)

On February 11, 1989 the insured returned to Haiti "for the purpose of locating his natural mother ... and bringing her back to the United States." (Id. ¶ 7)[1] The insured was scheduled to return on the night of February 14, 1989. (Id.) Plaintiff Saint Calle and her two children drove to the airport to meet the insured's return flight, but he did not arrive. (Id. ¶ 8)

After several fruitless telephone calls, plaintiff Saint Calle flew to Haiti on February 16 to try to find the insured. (Id. ¶ 9) She went first to the rental car company the insured had used, and found that he had picked up a rental car, but had not returned it. (Id. ¶ 10) She went to the hotel where the insured had checked in, but he had neither slept in his room nor checked out. (Id. ¶ 11). With the help of the police, plaintiff Saint Calle and the manager of the rental car company eventually found the insured's rental car in Saint Marc. (Id. ¶ 13) As plaintiff Saint Calle described the accident,

[i]t seemed obvious that the car had skidded for about a quarter of a mile and flipped over into the embankment on the side of the road and completely burned.

1. According to plaintiff Saint Calle, the insured "was a family man in every sense of the word— so much so, that it was his feelings and the feelings of his family for his natural mother that compelled Jean to return to Haiti to locate her and to bring her back to the United States." (Saint Calle Aff. ¶ 24)

The car itself was upside down. Not only were the plants and trees along the road hit by the car, but some of the trees by the top of the road were burned as well.

(*Id.*)

Plaintiff Saint Calle went to the hospitals in Saint Marc and Port-au-Prince, but found no clue to the whereabouts of the insured. (*Id.* ¶ 17) She contacted the morgue, the prison, the department of motor vehicles, and a lawyer; she filed a report of a missing person with the police; and she placed a lost person announcement on the radio—all to no avail. (*Id.* ¶¶ 17–18) Finally, plaintiff Saint Calle recovered the insured's handbag from the hotel—but not his wallet, passport, or green card—and left Haiti on February 20. (*Id.* ¶ 20)

According to plaintiff Saint Calle, "the only reason that [the insured] would not return would be that something unnatural happened to him. I saw the condition of Jean's rental car firsthand. It is beyond reason that anyone could have survived such an accident." (*Id.* ¶ 25) Plaintiff Saint Calle attests that the insured "was a big believer in life insurance and the security of his family," and, as evidence of this belief, notes that the $351,000 Prudential policy was nearly equal in face value to the $350,000 mortgages on the insured's properties. (*Id.* ¶ 27)

Following the insured's disappearance, plaintiff Saint Calle experienced financial difficulties which forced her to close the insured's business within six months after he disappeared. (*Id.* ¶ 36) Without the business's income, she was unable to meet the mortgage payments on the insured's properties, and foreclosure actions were commenced. (*Id.* ¶ 37) On October 5, 1990, several months after she filed this suit, plaintiff Saint Calle filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. (*Id.* ¶ 39, Ex. B)

Defendants dispute whether there is proof that the insured actually died. (Def. Pruden-

tial Reply at 4–5, 10; Def. John Hancock Mem. at 1) They point out that there is no record of the insured's death.[2] Defendant Prudential calls plaintiffs' assertion that the insured died "self-serving and patently absurd" and argues that "[i]n addition to the issue of plaintiff's credibility, there are many plausible explanations for the disappearance of a man in financial difficulty, one of which is the insurance proceeds in excess of one million dollars." (Def. Prudential Reply at 5) Defendant Prudential argues that "there is no evidence which indicates that the Insured has died," that "plaintiff Juliette St. Calle's dramatic hearsay filled affidavit ... has no probative value whatsoever," and that "[c]ertainly, plaintiff Juliette St. Calle's statements cannot provide a basis for [relief]." (*Id.* at 5–6, 10)

Fed.R.Civ.P. 56(c) requires a summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The disputed issues of fact must be "material to the outcome of the litigation," *id.* at 11, and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The

---

**2.** While in Haiti plaintiff Saint Calle consulted a Haitian lawyer, but he could procure only a Haitian Acte de Deces—a report of a declaration of death. (*Id.* ¶ 21) Although plaintiffs relied initially on the Acte de Deces as proof of the insured's death, apparently they have abandoned

such reliance based on defendant Prudential's argument that this document is inadmissible hearsay. (Def. Prudential Mem. at 11–17) Whether or not it is admissible, this Court does not rely in any way on the Acte de Deces in deciding these motions.

non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* With respect to materiality, "substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## II.

There is nothing but rhetoric behind Prudential's argument that "[a]s a matter of law, plaintiffs' allegations do not raise a triable issue of fact...." (Def. Prudential Reply at 5) Prudential both oversimplifies the novel and complex fact issues in this case, and mischaracterizes the New York cases and statutes which describe the rules for determining whether or not a person has died.

In general, when a person dies, a court may apportion rights which depend upon that person's death. However, such a court faces a quandary when a person disappears, but death is uncertain.

■ Plaintiffs argue that a fact issue exists as to whether the insured should be declared dead, pursuant to Section 2–1.7 of the New York Estates, Powers, and Trust Law. EPTL § 2–1.7 (McKinney 1981 & 1993 Supp.) EPTL § 2–1.7 provides, in relevant part, that:

(a) A person who is absent for a continuous period of five years, during which, after diligent search, he has not been seen or heard of or from, and whose absence is not satisfactorily explained shall be presumed, in any action or proceeding involving the property of such person, contractual or property rights contingent upon his death or the administration of his estate, to have died five years after the date such unexplained absence commenced, subject to the following:

(1) The fact that such person was exposed to a specific peril of death may be a sufficient basis for determining that he died less than five years after the date his absence commenced.

Therefore, the insured may be presumed dead on February 14, 1994—five years after the date he disappeared—upon proof of a diligent search and a showing that there is no satisfactory explanation for the person's absence. EPTL § 2–1.7.

Until that date, however, plaintiffs can rely only on Section 2–1.7(a)(1). In this case, that section means that "the fact that [the insured] was exposed to a specific peril of death may be a sufficient basis for determining that he died [in the car accident in Haiti.]" EPTL § 2–1.7(a)(1). Consequently, I must decide if there is a genuine issue of fact as to whether the insured was exposed to a "specific peril of death."

No federal court has addressed the question of what constitutes a "specific peril of death" under EPTL § 2–1.7(a)(1). Section 2–1.7(a)(1) derives from an exception to the long-standing New York common law rule that a presumption of death arose only after a person had been absent for seven years. *See Connor v. New York Life Ins. Co.*, 179 A.D. 596, 597, 166 N.Y.S. 985, 986 (2d Dep't 1917) (citing cases). As originally stated, that exception provided that

if seven years' absence follows a catastrophe, occurrence, or hazard whereby the absent one was subjected to peril of his life of such a character that the evidence of his death might be destroyed with death itself, as, for instance, death in a conflagration, or by drowning, the inference of fact may be drawn that the death occurred at the time of such peril.

*Connor*, 179 A.D. at 598, 166 N.Y.S. at 986. Through the 1960s, several courts followed *Connor* and declared a person dead prior to seven years of absence. *See, e.g., In re Brevoort's Will*, 190 Misc. 328, 73 N.Y.S.2d 216 (Sur.Ct. Westchester County 1947) (man who embarked on ocean voyage in a yawl, parts of which were found after a storm, declared dead); *In re Mt. Vernon Trust Co.*, 193 Misc. 226, 228, 83 N.Y.S.2d 902, 903 (Sup.Ct. Westchester County 1948) (crew member of a bomber which was damaged by enemy anti-aircraft fire and landed in the Pacific declared dead); *Matter of Frankel*, 196 Misc. 268, 270, 92 N.Y.S.2d 30, 33 (Sur.Ct.N.Y.County 1949) (mother and chil-

dren who disappeared during 1941–44 German invasion of Lithuania declared dead); *In re Bobrow's Estate*, 14 Misc.2d 816, 179 N.Y.S.2d 742 (1958) (woman last seen alive in burning house declared dead); *In re Zucker's Will*, 31 Misc.2d 176, 177, 219 N.Y.S.2d 72, 73 (Sur.Ct.Nassau County 1961) (70–year–old man with medical problems who was last seen walking near a lake declared dead).

In 1966, New York enacted EPTL § 2–1.7, a statute which reduced from seven to five years the period required to presume death from absence. EPTL § 2–1.7. Although much of Section 2–1.7 simply restated Section 80–a of the previous New York Decedent Estate Law, Section 2–1.7(a)(1) was a substantial revision—it expanded the statute's coverage by "codif[ying] case law" as to the "specific peril of death" exception. EPTL § 2–1.7 at 123 (reviser's notes) (citing cases).

Since 1966, New York courts have invoked Section 2–1.7(a)(1) liberally. "[T]he totality of circumstances must be examined" in determining whether a person was exposed to a "specific peril of death." *Estate of Primavera*, N.Y.L.J., at 31, col. 6 (Sur.Ct.Westchester County Oct. 27, 1989) (homicide inferred from trail of blood). As one court noted, "EPTL 2–1.7(a)(1) is normally invoked when a person disappears after having been involved in a catastrophic event, to wit, a shipwreck or airplane crash. Although the term 'specific peril' normally connotes this type of disastrous occurrence it is not necessarily confined to a catastrophe of that nature." *In re Estate of Downes*, 136 Misc.2d 1031, 1032, 518 N.Y.S.2d 558, 559 (Sur.Ct.Suffolk County 1987) (man suffering from Alzheimer's disease who disappeared from adult home near body of water declared dead); *see also Matter of Merrill*, N.Y.L.J., at 31, col. 6 (Sur.Ct.Westchester County April 3, 1990) (drug-related murder inferred from hacked-up body parts); *In re Estate of Rice*, N.Y.L.J., at 12, col. 5 (June 19, 1985) (21–year–old who disappeared while aboard small boat which capsized in Long Island Sound was exposed to "specific peril"); *In re Estate of Conrad*, 109 Misc.2d 756, 440 N.Y.S.2d 991 (1981) (retired man who was close to family and friends and had no health, social, or legal problems who disappeared on voyage from

the Bahamas to Florida declared dead); *Chiaramonte v. Chiaramonte*, 106 Misc.2d 822, 435 N.Y.S.2d 523 (1981) (man who disappeared during flight on private airline declared dead when no survivors or wreckage were found); *Estate of Cowan*, N.Y.L.J., at 15, col. 1 (Mar. 31, 1980) (person who disappeared along with tugboat and crew and failed to reach destination due to hazardous weather conditions was exposed to "specific peril").

On the other hand, the courts will not declare a person dead if facts are present to support a different conclusion that a reasonable fact finder could accept as a more likely explanation for absence. *See, e.g., Cohen v. U.S. Life Ins. Co.*, 143 A.D.2d 6, 531 N.Y.S.2d 273 (1st Dep't 1988) (officer of union controlled by organized crime who was indicted on 33 counts of fraud and was awaiting trial not declared dead merely because he received threats from organized crime figures and then disappeared); *Matter of Lindbergh*, N.Y.L.J., at 27, col. 3 (October 25, 1988) (no presumption of death for absentee who was under investigation for tax evasion and for distribution and sale of a controlled substance). Whether a presumption of death should arise from the evidence is normally a question of fact for the jury; the question is one of law for the judge only where the evidence is without contradiction and is incapable of creating conflicting inferences in reasonable minds. *See, e.g., Kutner v. New England Mut. Life Ins. Co.*, 57 A.D.2d 697, 395 N.Y.S.2d 540 (1977); *In re Bobrow's Estate*, 14 Misc.2d 816, 179 N.Y.S.2d 742 (1958). The courts require varying degrees of evidence to declare death. *See, e.g., Chiaramonte*, 106 Misc.2d at 825, 435 N.Y.S.2d at 525 ("There is a distinction between mere unexplained absence and a disappearance under circumstances that strongly point to immediate death."); *In re Brevoort's Will*, 190 Misc. at 333, 73 N.Y.S.2d at 220 ("[M]ore conclusive evidence will be required to support the finding of death when the party seeking such determination is unaided by the presumption arising from [five] years' absence.").

■ By the standard of the above cases, it appears that plaintiffs have presented facts that would allow "a rational trier of fact to find" that the insured is dead. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356. A jury could find, based on plaintiffs' evidence, that the insured was exposed to a "specific peril of death" during his trip to Haiti. EPTL § 2–1.7(a)(1). It appears that the insured was close to his family and faced no crises in his health, finances, or personal life. *See Estate of Primavera*, N.Y.L.J., at 31, col. 6 (Sur.Ct.Westchester County Oct. 27, 1989). A jury could find that, unless overtaken by death, the insured would have returned from Haiti or at least contacted some member of his family. Plaintiff Saint Calle appears to have conducted a diligent search for the insured, and the evidence, including the accident scene, supports the conclusion that the insured's absence resulted from death. In other words, there are "circumstances that strongly point to immediate death." *Chiaramonte*, 106 Misc.2d at 825, 435 N.Y.S.2d at 525. Therefore, defendant Prudential's motion for summary judgment is denied because there are disputed fact issues as to the insured's death.

### III.

■ Defendants cross-claim to rescind the $260,000 John Hancock policy and the $351,000 Prudential policy, and allege that the insured misrepresented material facts in his applications for those policies. Specifically, defendants claim that the insured concealed over 30 moving violations and driver's license suspensions in the two and one-half years preceding the applications. (Gross Aff. ¶ 10) Plaintiffs argue that a question of fact exists as to whether the misrepresentations were material, and as to whether defendants knew or should have known about the insured's driving record. It is well-settled New York law that an insurer is entitled to rescind any policy issued in reliance on a material misrepresentation, and that summary judgment in favor of an insurer is both available and appropriate when an insurance application contains such a material misrepresentation. N.Y.Ins.Law § 3105; *Mutual Benefit Life Ins. Co. v. JMR Elec. Corp.*, 848 F.2d 30 (2d Cir.1988); *Schondorf v. SMA Life Assur. Co.*, 745 F.Supp. 866 (E.D.N.Y.1990); *Cohen v. Mutual Benefit Life Ins. Co.*, 638 F.Supp. 695 (E.D.N.Y.1986); *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214, 385 N.Y.S.2d 308 (1st Dep't 1976), *aff'd mem.*, 42 N.Y.2d 928, 397 N.Y.S.2d 1007, 366 N.E.2d 1361 (1977).

■ First, plaintiffs argue that in order to rescind a policy, an insurer must demonstrate that, according to its underwriting practices, "it would have *rejected*" the insured's application based on his driving record. (Pl.Mem. at 9) (emphasis added) The Second Circuit has never endorsed this interpretation of New York law. In contrast, the Second Circuit has held that the materiality inquiry must be made with respect to the *particular* policy at issue. *See, e.g., Mutual Benefit Life Ins. Co. v. JMR Elec. Corp.*, 848 F.2d 30, 32 (2d Cir.1988).

The insured in *Mutual Benefit v. JMR Elec.* was a smoker who represented that he did not smoke and thus received a non-smoker policy. The Second Circuit held in that case that the question of materiality depended on whether the insurer would have issued "the particular contract it did at the same premium had the facts been disclosed." *Id.*, 848 F.2d at 32 (citing *Cohen v. Mutual Benefit Life*, 638 F.Supp. at 697). The Court noted that the statutory definition of "materiality," found in Section 3105(b) of the New York Insurance Law, permits avoidance of liability under a policy where "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make *such contract*." (emphasis added).

> If a fact is material to the risk, the insurer may avoid liability under a policy if that fact was misrepresented in an application for that policy whether or not the parties might have agreed to some other contractual arrangement had the critical fact been disclosed.

*Mutual Benefit*, 848 F.2d at 32. That the insured "might not have refused the risk on *any* terms had it known the undisclosed facts is irrelevant." *Id.*

■ The materiality determination normally presents an issue of fact for the jury,

but "where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Id.*, 848 F.2d at 32 (citing cases). Moreover, when the insurer has produced evidence of its underwriting policies, the question of materiality becomes a matter of law for the court to decide. *Mutual Benefit*, 848 F.2d at 32 ("Where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine.") (quoting cases); *see also Schondorf v. SMA Life Assur. Co.*, 745 F.Supp. 866 (E.D.N.Y.1990); *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214, 385 N.Y.S.2d 308 (1st Dep't 1976), *aff'd mem.*, 42 N.Y.2d 928, 397 N.Y.S.2d 1007, 366 N.E.2d 1361 (1977).

According to defendants' underwriting policies, the insured's misrepresentations were material. Defendant Prudential has demonstrated that had it known about the insured's driving record, it would not have issued the $351,000 policy. (Grassi Aff. ¶¶ 9, 12–13) In fact, it may not have issued *any* policy to the insured. (*Id.*) Similarly, defendant John Hancock has demonstrated that had the insured responded truthfully to the two questions on its application about his driving record, it would not have issued the $260,000 policy. (Barker Reply Aff. ¶¶ 3, 5) At the least John Hancock would have charged nearly double the premium it charged the insured. (*Id.* ¶ 9) Thus, defendants' affidavits are clear and substantially uncontradicted proof that insured's undisclosed driving infractions are material.

Finally, plaintiffs argue that because it is industry practice to order a motor vehicle record for all life insurance applicants in the insured's age group, defendants should have known about the insured's driving record. However, the issue before this Court is *defendants'* practices, not those of any other insurer. *See, e.g., Greene v. United Mut. Life Ins. Co.*, 38 Misc.2d 728, 238 N.Y.S.2d 809 (Sup.Ct.Bronx Co.1963), *aff'd*, 23 A.D.2d 720, 258 N.Y.S.2d 323 (1st Dep't 1965); N.Y.Ins.Law § 3105(c) ("In determining the question of materiality, evidence of the practice of *the insurer which made such contact* with respect to the acceptance or rejection of

similar risks shall be admissible.") (emphasis added). Contrary to plaintiffs' contention, defendants' affidavits aver that defendants had no knowledge of the insured's driving record and no reason to suspect any problems. (Barker Reply Aff. ¶ 2–4) Defendants may not be charged with knowledge of an applicant's driving record simply because they could have obtained certain information before issuing the policies. Defendants were entitled to rely on the insured's representations.

Plaintiffs do not dispute that the insured had a long record of bad driving. Before he applied for the two policies at issue here, the insured received more than 30 tickets for moving violations, including four speeding tickets, one ticket for unreasonable speed, five tickets for passing red lights, two for disobeying traffic devices, seven for driving without a license, and several for driving an uninsured and unregistered vehicle. (Gross Aff. ¶ 10 and Exs.) The insured disclosed none of these violations. Because there is no genuine issue as to whether the insured's misrepresentations were "material," defendant John Hancock is entitled to rescind its $260,000 policy, and defendant Prudential is entitled to rescind its $351,000 policy.

## IV.

Defendant Prudential moves for summary judgment as to the additional Accidental Death Benefit of $260,000 that is part of the $260,000 Prudential policy. (Greenberg Aff.Ex.C; Def. Prudential Mem. at 27–30) A beneficiary seeking to recover accidental benefits under an insurance policy has the burden of proving that the insured's death was accidental and that death resulted from the accident and independent of all other causes. *Barker v. Goldberg*, 705 F.Supp. 102, 103 (E.D.N.Y.1989) (citing cases); *Daniel v. Allstate Life Ins. Co.*, 71 A.D.2d 872, 419 N.Y.S.2d 662 (1979).

To determine whether an occurrence was an "accident" within the meaning of an accident insurance policy, one must look to the casualty from the viewpoint of the insured and determine whether it was unexpected, unusual, and unforeseen; and the

beneficiary must prove that the death of the insured was covered by the terms of the policy. *Lachter v. Insurance Co. of North America*, 145 A.D.2d 540, 536 N.Y.S.2d 93 (2d Dep't 1988) (noting that whether occurrence constituted an "accident" within the meaning of an accident insurance policy is generally for the trier of fact to determine).

 A genuine issue of fact exists as to whether the insured died in an "accident" for the same reasons that fact issues exist as to whether the insured died at all. Indeed, a jury could find that the evidence of the wrecked car on the road and the insured's dismal driving record point strongly to an accidental death. Defendants have not shown that plaintiffs will be unable to carry their burden as to this issue. In fact, if a jury determines that the insured is dead, then that determination—coupled with facts about what can only be called a car "accident"—will justify a finding that plaintiff Saint Calle is entitled to the additional $260,-000 Accidental Death Benefit.

### V.

Finally, defendants move for summary judgment as to plaintiffs' claims for punitive damages against both insurers. Plaintiff Saint Calle claims that a fact issue exists as to whether "the acts of John Hancock and their agent, Paul Vickers, could be found to have been willful and malicious." (Saint Calle Aff. ¶ 40)

Plaintiffs' punitive damages claims have no basis whatsoever, and they are dismissed. Plaintiff Saint Calle alleges only that Paul Vickers met with her, told her she would be "receiving some checks," and then informed her "that John Hancock had placed a stop payment on the check and a hold on the account." (*Id.* ¶¶ 29–33)

 Under New York law punitive damages are appropriate in cases involving "gross, wanton, or willful fraud or other morally culpable conduct." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir.1991), *cert. denied on remand*, —— U.S. ——, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992) (citing cases); *see also Perico, Ltd. v. Ice Cream Indus., Inc.*, 87 Civ. 4211, at 3–4, 1990 WL 11539 (S.D.N.Y. Feb. 9, 1990) (MBM) (citing *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118–19 (2d Cir.1986)). Punitive damages are intended to punish and set an example that will deter similar conduct in the future. *See, e.g., Schoenholtz v. Doniger*, 657 F.Supp. 899 (S.D.N.Y.1987). Punitive damages are not awardable for isolated transactions—such as breach of insurance contract—even if committed willfully and without justification. *See, e.g., O'Dell v. New York Prop. Ins. Underwriting Ass'n*, 145 A.D.2d 791, 535 N.Y.S.2d 777 (3d Dep't 1988); *Cass v. Broome County Co-op Ins. Co.*, 94 A.D.2d 822, 463 N.Y.S.2d 312 (3d Dep't 1983); *cf. Dry Clean Depot of America, Inc. v. The Dry Cleaner*, 92 Civ. 6603, at 2–3, 1992 WL 395526 (Dec. 28, 1992) (MBM) (dismissing punitive damages claim in fraud action).

 In essence, plaintiffs allege merely that defendants failed to settle their insurance claims. Plaintiffs have presented no evidence of morally culpable conduct by defendants, and their claims for punitive damages are dismissed.

\* \* \*

For the reasons stated above, defendants' motion for summary judgment is granted as to the $260,000 John Hancock policy and the $351,000 Prudential policy, and is otherwise denied.

SO ORDERED: