OPINION OF THE COURT
Lee L. Holzman, J.
Petitioner, the absentee’s spouse, seeks a determination pursuant to EPTL 2-1.7 that the absentee died on July 17, 1994, the date of his disappearance, and the issuance of letters of administration to herself. The primary issue is whether the *630 absentee is to be declared dead at or about the time that he disappeared or three years from that date.
A hearing was held in which the petitioner, one of the absentee’s former spouses, the guardian ad litem for the absentee, and the guardian ad litem for three of the absentee’s infant children all participated. The proof adduced established that the petitioner and the absentee were married on June 6,
1993, that the absentee had three children as a result of prior marriages, and that, on the date of his disappearance, the absentee and the petitioner were expecting the birth of a child. On July 17, 1994, the absentee had been employed as a fireman for approximately 12 years, had operated a Snapple distributorship, and had just sold a juice distributorship. He returned from his job as a fireman at approximately 9:00 in the morning on that date and he and his wife went to a picnic in upstate New York. Petitioner testified that it was not unusual for her husband to receive calls regarding his Snapple route late at night. In any event, on the way home, at approximately 11:00 p.m., his beeper indicated that he had received a call. When he arrived home, he made a call and then told his wife that he had to see a store owner with regard to a Snapple delivery. Before the absentee departed into the night, he and his wife walked the dog together. He then got in his car and left, never to return.
Petitioner reported her husband missing to the New York City Police Department on the next morning. The police conducted an extensive investigation in search of the absentee. Despite extensive efforts, the police never found any trace of his whereabouts. Police reports indicate that there was no record in the hospitals or in the morgues of any unidentified males matching the absentee’s description. His car was located on July 27, 1994 on Mosholu Parkway in the Bronx. An examination of the vehicle and forensic testing were conducted but the police were unable to find any indication that anything out of the ordinary had happened while the absentee was in the automobile. Petitioner consulted a company that uses a nationwide computerized data base to locate missing persons but learned nothing that indicated that the absentee was alive. Despite this diligent search by the police and the petitioner, the absentee has not been found, nor has any information whatsoever been obtained to indicate his whereabouts.
Prior to his disappearance, the absentee saw his children, his parents, and his sisters on a weekly basis. After July 17, 1994, neither his wife, his children, his parents, his former *631 wives, nor any of his co-workers at the New York City Fire Department have seen or heard from the absentee. Petitioner claims that the absentee had not expressed any fears to her and that he appeared to be happy. The police report indicates that the absentee did not drink, gamble, or take drugs. Petitioner further alleges that the absentee had “left behind all of his known personal property, including the proceeds from the sale of his juice route, [and] all of his clothing and personal effects, except the clothes that he was wearing when he left the apartment.” Petitioner was given all of the property from his locker at the firehouse and, as far as she could tell, there was nothing missing. There had been no unusual withdrawals from his bank accounts, his passport was left at home, and there were no cash advances made on any of his credit cards.
The date upon which the absentee is declared dead may make a significant difference to his distributees. All of the parties who participated at the hearing seek a determination that the absentee died as of the date of his disappearance. This request was made at least in part because the absentee’s employment was terminated by the Fire Department for unauthorized failure to appear for work. Apparently, members of the absentee’s family might be entitled to additional benefits if the absentee stopped working due to his death rather than if he was terminated for wrongful failure to appear on the job.
In relevant part, EPTL 2-1.7 (a) provides that:
“A person who is absent for a continuous period of three years, during which, after diligent search, he or she has not been seen or heard of or from, and whose absence is not satisfactorily explained shall be presumed, in any action or proceeding involving any property of such person, contractual or property rights contingent upon his or her death or the administration of his or her estate, to have died three years after the date such unexplained absence commenced, subject to the following:
“(1) the fact that such person was exposed to a specific peril of death may be a sufficient basis for determining that he or she died less than three years after the date his or her absence commenced.” (Emphasis added.)
Here, the proof adduced clearly established that the absentee has been continuously absent since July 17, 1994, and that, despite a diligent search, there is no explanation for his absence. Thus, there is no question that the absentee should be presumed dead. The issue then becomes the date on which the absentee should be declared dead.
*632 Absentees who have been declared dead prior to the prescribed statutory period have usually been involved in “an accident, occurrence, catastrophe or hazard” such as an airplane crash, a shipwreck, a conflagration, or other circumstances where the failure to find the corpse was not surprising (Chiaramonte v Chiaramonte, 106 Misc 2d 822, 824-825). However, absentees have been declared dead in this jurisdiction as of a date prior to the expiration of the required period of continuous absence notwithstanding that their last known acts ordinarily would not have been considered to be hazardous but for the fact that immediately thereafter the absentees disappeared without a trace (Matter of Downes, 136 Misc 2d 1031 [absentee who suffered from Alzheimer’s disease and disappeared from adult home near water declared dead as of the date of his disappearance]; Jacobson v Jacobson, 56 NYS2d 588 [absentee with impaired vision last seen walking on a road towards the lake declared dead as of the date of his disappearance]; Matter of Buckham’s Will, 5 NYS 565 [absentee, who was 67, infirm and disappeared from his house near a river on a stormy night, declared dead as of the date of her disappearance] ; Matter of Ketcham’s Estate, 5 NYS 566 [absentee who unsuccessfully attempted to commit suicide and disappeared on the following day declared dead as of the date of his disappearance]). Additionally, absentees have been declared dead as of the date of their disappearances even though one would usually have discovered at least parts of their bodies if they had died from the occurrence which was found to be the specific peril (Saint Calle v Prudential Ins. Co., 815 F Supp 679 [absentee’s rental car found upside down and burned at the bottom of an embankment]; Estate of Primavera, NYLJ, Oct. 27, 1989, at 31, col 6 [absentee’s homicide inferred from trail of blood]).
The predecessor to EPTL 2-1.7, Decedent Estate Law § 80-a, essentially sets forth the common-law requirements to presume a person dead based upon absence, to wit, “a person * * * who * * * absents himself * * * for seven years * * * is presumed to be dead”. The predecessor statutes to EPTL 2-1.7, as was the case with the common law, did not contain any specific provision with regard to the date that the absentee should be declared dead, and the question of the date that the absentee should be declared dead was left for judicial interpretation. In Connor v New York Life Ins. Co. (179 App Div 596, 598), the Court noted that New York had initially followed the English rule that, after the presumption of death arose from the *633 required period of absence, the time of death had to be established “by other evidence by the party carrying the burden of proof’ but that ultimately New York adopted the rule that there is a presumption that death took place at the end of the required period of absence, subject to the following: “But we think that reason and probability require that the rule be modified so that if seven years’ absence follows a catastrophe, occurrence or hazard whereby the absent one was subjected to peril of his life of such a character that the evidence of his death might be destroyed with death itself — as for instance death in conflagration, or by drowning — the inference of fact may be drawn that the death occurred at the time of such peril. The presumption that the death occurred at the end of the seven years obtains only by the necessity of the case in the absence of evidence indicating death at another time. When there is such evidence, the necessity for presuming that death occurred at the end of the period no longer exists.”
Based upon the above analysis of the law, the Connor Court stated that the proof in that case, finding the absentee’s clothes in a bath house and a ring and a pin in the office, would not support a presumption of death in any proceeding commenced prior to the seven-year period but that once the period had expired and the presumption of death arose, it would support a finding that he died on the date that he disappeared. The presumption that the absentee died as of the last date of the required period of absence has been held to have been rebutted not only by exposure to probably fatal danger but also where the character, habits, and close family ties of the absentees established that it was improbable that they had abandoned home and family (Praetorians v Phillips, 184 Okla 521, 88 P2d 647; Schell v Metropolitan Life Ins. Co., 3 SW2d 269 [Mo]; 9 Couch, Insurance § 138.10 [3d ed]). In Schell v Metropolitan Life Ins. Co. (supra, 3 SW2d, at 270), the court affirmed a jury determination that the absentee, who was gainfully employed and lived with his pregnant wife and three children when he disappeared, died on a date prior to seven years from the date that he disappeared and stated that “[i]t is difficult to believe that he suddenly developed into such a monstrous creature” abandoning his home and family.
Based upon the belief that the suffering to the survivors caused by the absentee’s disappearance should not be exacerbated by requiring that they wait an unduly prolonged period of time to have their rights in the absentee’s property fixed, the Legislature enacted EPTL 2-1.7, initially shortening the *634 common-law period of seven years to five years (L 1966, ch 952) and then to three years (L 1993, ch.514, §63). Furthermore, EPTL 2-1.7 was the first statutory provision in New York in which it was explicitly stated that the absentee was presumed to have died at the expiration of the required period of absence unless the absentee “was exposed to a specific peril of death”. (EPTL 2-1.7 [a] [1].) Viewing EPTL 2-1.7 with a historical perspective, it is clear that the Legislature did not intend to limit the rights of the survivors of absentees and benefit those who would seek to deprive them of benefits by making it more difficult to declare an absentee dead at a date prior to the expiration of the required period of absence. Instead, the language of EPTL 2-1.7, including “exposed to a specific peril of death”, reflects the Legislature’s attempt at incorporating the judicial interpretation of the common law of New York as of the date that it was enacted, to wit, that the absentee is presumed to have died at the end of the required period of absence unless there is clear and convincing proof “indicating death at another time” (Connor v New York Life Ins. Co., supra, 179 App Div, at 598). Thus, Professor Turano has noted that “specific peril exposure * * * which enables the court to set the date of death less than five years after disappearance used to be typically a boat wreck, a plane crash or another natural catastrophe, but now has taken on a distinctly modern tone” (1990 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 2-1.7, 1998 Pocket Part, at 22).
In the case at bar, as in Connor v New York Life Ins. Co. (supra), the absentee could not have been declared dead on the date that he disappeared based solely upon the circumstances surrounding his disappearance on that date. However, here as in Connor, now that the absentee is presumed to have died as a result of his continuous unexplained absence for the required period, the proof adduced, although somewhat different in nature, is as compelling as the proof adduced in other New York cases to rebut the presumption that the absentee died at the end of the required period of absence and to conclude that he died at or about the time that he disappeared. Absentees have been declared to be dead as of the date of their disappearance in several New York cases as a result of drowning or other causes notwithstanding that there was no evidence that they were actually upon the water when they disappeared (Connor v New York Life Ins. Co., supra; Matter of Downes, supra; Jacobson v Jacobson, supra; Matter of Buckham’s Will, supra). Although the perils of traversing the city streets alone *635 in the wee hours of the morning cannot be equated with the perils of the sea, the circumstances of this case, including that more than three years have elapsed without any trace that the absentee, who had no observable reason to abandon his family, was alive at any particular time after he left his abode as the clock approached the stroke of midnight on July 17, 1994, make it more likely than any other alternative that the absentee died during the early hours of July 18, 1994. No other explanation is as logical considering the following: the absentee was industrious and gainfully employed; he had a good relationship with his wife and they were expecting a child; he visited regularly with his other children, his parents and his siblings; he left his abode on that date without taking any of his possessions or his passport; and his most obvious mode of transportation, his car, was found abandoned in the city.
Accordingly, the court holds that the absentee died on July 18, 1994. Letters of administration shall issue to the petitioner upon her filing a bond in the sum of $400,000.
Finally, it appears that the present language of EPTL 2-1.7, when viewed outside of its historical context, could easily be seized upon by those who would benefit at the expense of the survivors of absentees to have the absentees declared dead three years after their disappearance even though now that the three-year period has elapsed it appears more likely that they died on the date that they disappeared than on any other date. Consequently, it is respectfully suggested that EPTL 2-1.7 should be amended to clarify that a person who is absent for a continuous period of three years, during which, after diligent search he or she has not been heard from, and whose absence is not satisfactorily explained, shall be presumed to have died three years after the date such unexplained absence commenced or on such earlier date as clear and convincing proof establishes is the most probable date of death. It could also be provided that an absentee who was exposed to a specific peril of death (which requirement is to be strictly construed) may be declared dead in a proceeding commenced at any time after such exposure.